486

Mac PARKS, et al *v.*
Van B. TAYLOR, Chancery Judge, et al

84-253                                      678 S.W.2d 766

Supreme Court of Arkansas
Opinion delivered October 29, 1984

*Witt Law Firm,* by: *Ernie Witt* and *R. Kevin Barkan,* for appellants.

*Steve Clark,* Att'y Gen., by: *Tim Humphries,* Asst. Att'y Gen., for appellees.

DARRELL HICKMAN, Justice. The petitioners ask us to review an order of the Chancery Court of Logan County, entered after a hearing, on the sufficiency of signatures to an initiated measure to be referred to the voters of Logan County. We deny the writ.

The proposal was to repeal a county ordinance which levied a one cent sales tax. Susan Hixson, the county clerk, examined the petitions for ten days and certified that there were sufficient signatures. She found 1,291 signatures to be valid, and 667 signatures to be invalid.[1] The Logan County Election Commission had certified that at the last general election 8,577 votes had been cast for the office of circuit clerk. By law, an initiated or referred county measure must contain valid signatures of 15% of that figure, which in this case is 1,287. Since there were four more valid signatures than required, the clerk certified the

---

[1] She examined a total of 116 separate petitions, and excluded some because of forgery. She testified that she thought she excluded 20 such petitions, but the record shows 22 were actually nullified. Another three were also nullified because the verifications were not notarized. For every signature not counted, a reason was given; usually it was because there was no record of voting registration.

question to the election commission to be placed on the ballot in the forthcoming election.

Four taxpayers filed suit in Logan County Chancery Court to prevent the certification, alleging among other things that some of the signatures were not made in the presence of the affiant attesting to the petition. All necessary parties were joined, including the county clerk and the board of election commissioners. The petitioners asked to intervene as the real parties in interest since they represented those who proposed the initiated act.

One of the requests made to the chancery court by the intervenors was that the court order that the tally sheets of the 1982 general election be protected and counted. The allegation was that the 1982 certification of the number of votes for the circuit clerk position was incorrect; that, in fact, the figure of 8,577 votes certified was the number of votes cast in the governor's race, and not the number cast in the circuit clerk's race which was uncontested. The trial court refused to so order and accepted the certification as the binding figure. After hearing the testimony of the circuit clerk, which is in the partial record before us, and evidently the testimony of others not in the record, the chancery judge found twelve petitions totally null because "some or all of the signatures appearing on such petitions were not executed in the presence of the persons verifying such petitions." He also ordered the clerk to recount two petitions which she had nullified because of forgeries. See Ark. Stat. Ann. § 17-4011(8) (Repl. 1980). No question is raised regarding this finding of the court.

According to the petitioners' request to us, the net result of the trial court's order was that 151 signatures were thrown out so that the petitions will fall short of the number of signatures required by 147. But the trial court remanded the matter to the circuit clerk to recount the signatures pursuant to the order, and, in the event the clerk finds an insufficient number of signatures, the proponents are allowed ten additional days in which to solicit and add signatures in accordance with Ark. Stat.

Ann. § 17-4011(9) for the 1986 General Election.[2] That order was entered October 22, 1984.

From that order comes this petition which asks us to do two things. First, we are asked to order the chancery court to get the actual tally sheets and determine the number of votes cast for circuit clerk and then certify that to be the actual number of votes cast in that race, instead of the number that was previously certified. Next, we are asked to overturn the chancellor's ruling which threw out several petitions because all of the signatures were not actually witnessed by the affiant. We cannot say the chancellor was clearly wrong in either instance and the requested relief is denied. (The request is for a writ of certiorari, mandamus, or prohibition, and is treated as a petition for a writ of certiorari.)

The county board of election commissioners certified the votes almost two years ago and that certification is entitled to at least a presumption of correctness. *Pogue* v. *Grubbs,* 230 Ark. 805, 327 S.W.2d 4 (1959). In *Rogers* v. *Mason,* 246 Ark., 1, 436 S.W.2d 827 (1969), we held that official returns are *prima facie* correct. There is no evidence that there has been an election within the two years since. The election commissioners are only required to hold the ballots and certifications in custody for safekeeping for six months. In fact they are supposed to destroy them after six months. Ark. Stat. Ann. § 3-802 (Repl. 1976). The county clerk admits, however, that she does have the ballots. The evidence offered the trial court regarding the actual votes in the circuit clerk's race was exactly the same number certified to have been cast in the race for circuit clerk, an uncontested race. The county clerk testified that the votes cast for circuit clerk were "probably not" the same number as had been cast in the governor's race.

Considering the circumstances of the case and the evidence before us, we cannot say the trial court was clearly wrong in denying the request. First, there is the

---

[2]The legality of allowing the petitions to be used in a later election is not before us.

presumptive validity of the certification. Second, there is the fact that no official or individual has kept the ballots and certifications secure from tampering who is charged by law with that duty. Third, this request was made at a very late date. The petitioners knew or should have known the number of certified votes needed to qualify an initiated act. Undoubtedly they did know because 600 more than the required number were submitted to the clerk. It was not until this lawsuit was filed that this extraordinary relief was requested. So we cannot say as a matter of law that the chancellor was wrong in refusing to allow the petitioners to invalidate the certification by the election commissioners.

The other issue before us is the trial court's finding which threw out entirely several petitions because the affiant did not see the attestants sign. The petitioners claim that the chancellor was wrong because in some instances the affiants merely said that they did not actually see *all* the persons sign in their presence. Conceding that fact, we cannot find fault with the chancellor's action. Amendment 7 to the Arkansas Constitution provides: "Petitions may be circulated and presented in parts, but each part of any petition shall have attached thereto, the affidavit of the persons circulating the same, that *all signatures hereon were made in the presence of the affiant. . . ."* (Emphasis added).

In *Sturdy* v. *Hall*, 201 Ark. 38, 143 S.W.2d 547 (1940), we considered this very question and said:

> The circulator of the petitions is the sole election officer, in whose presence the citizen exercises his right to sign the petition. The circulator must take affidavit that each signature is genuine, and if this affidavit is shown to be false, the petition loses its *prima facie* verity.

> * * *

> If, therefore, the circulator of a petition makes affidavit that the signatures are genuine which were

not signed by the petitioner himself, he has made a false affidavit, and when it is shown that the affidavit attached to a particular petition is false, that petition loses the presumption of verity.

Since the trial court found the affidavits false he was not wrong as a matter of law in excluding entirely the petitions of those affiants. At that point the burden was placed on the proponenets of the petitions to accept as sufficient all the names on a petition where the circulator's affidavit was shown to be false. No argument is made that proof exists which would require us to set aside the trial court's decision. Therefore, a writ of certiorari would not be in order.

Writ denied.

PURTLE, J., dissents.