Bob PORTER, on Behalf of Himself and All Other Similarly Situated; and Arkansas Executive Committee *v.* W.J. "Bill" McCUEN, Secretary of State Coalition for a Healthier Arkansas, Inc.

92-940                                    839 S.W.2d 521

Supreme Court of Arkansas
Opinion delivered October 21, 1992

*Friday, Eldredge & Clark,* by: *Paul Benham III,* for petitioners.

*Winston Bryant,* Att'y Gen., by: *Ann Purvis,* Asst. Att'y Gen., for respondent.

*Mitchell, Blackstock & Simmons,* by: *Clayton R. Blackstock,* for intervening respondent.

STEELE HAYS, Justice. This is the second phase of an original action attacking the proposed initiated act entitled "Cigarette and Tobacco Products Act." Petitioners are Bob Porter, on behalf of himself and all others similarly situated, and Arkansas Executive Committee. Respondents are W.J. "Bill" McCuen, Secretary of State, and Coalition for a Healthier Arkansas, Inc. (CHAR), Intervenor.

Petitioners' challenge is two-fold: they contend the ballot title is misleading and defective (Count I) and that numerous signatures on the initiative petitions are invalid (Count II). Petitioners sought the appointment of a Master to make findings on disputed issues of fact and an order invalidating the proposal.

We ordered expedited proceedings, appointed the Honorable Gerald P. Brown as Master and severed the ballot title issue, solely a question of law, from the factual issues involving the

signatures and the initiative petitions.

The parties proceeded promptly to submit briefs on the ballot title issue while they were presenting evidence to the Master. On October 9, 1992, we issued our decision with respect to the ballot title, holding that it was not misleading or otherwise defective and denying the petition as to that part. The arguments and our reasoning may be found in *Porter, et al.* v. *McCuen, et al.*, 310 Ark. 562, 839 S.W.2d 512 (1992).

We turn now to the Report of Master, whose findings we must sustain unless they are found to be clearly erroneous. The report cites a number of tenets which govern the procedures under Amendment 7, part of which reads:

> Only legal votes shall be counted upon petitions. Petitions may be circulated and presented in part, but each part of any petition shall have attached thereto the affidavit of the person circulating the same, that all signatures thereon were made in the presence of the affiant, and that to the best of the affiant's knowledge and belief, each signature is genuine, and that the person signing is a legal voter, and no other affidavit or verification shall be required to establish the genuineness of such signatures.

The initiative and referendum amendment must be liberally construed in order to effectuate its purposes and only substantial compliance with the amendment is required. *Reeves* v. *Smith*, 190 Ark. 213, 78 S.W.2d 72 (1935).

In *Sturdy* v. *Hall*, 201 Ark. 38, 143 S.W.2d 547 (1940), this court held that the circulator or canvasser of an initiative petition is comparable to an election official. The circulator of the petition is the sole election officer in whose presence the citizen exercises his/her right to sign the petition. The circulator must make an affidavit that each signature is genuine, and if this affidavit is shown to be false, the petition loses its prima facie verity.

In *Ellis* v. *Hall*, 219 Ark. 869, 245 S.W.2d 223 (1952), we held that where fraud on the canvasser's part is shown, the prima facie case made with the affidavit of the circulator in favor of genuineness of the petition is overcome, putting the burden of proof upon the defendant to establish the genuineness of each

signature.

■ In *Pafford* v. *State*, 217 Ark. 734, 233 S.W.2d 72 (1950), we held that one who attacks a petition cannot destroy the verity of the circulator's affidavit merely by proving that at least one signature is not genuine. The plaintiff must also adduce proof to show that the falsity of the canvasser's affidavit was conscious, rather than inadvertent.

■ Ark. Code Ann. § 7-9-108(b) (Supp. 1991), provides that each part of any initiative petition shall have attached thereto the affidavit of the person who circulated the petition to the effect that all signatures appearing thereon are made in the presence of the affiant and that to the best of the affiant's knowledge and belief each signature is genuine and that the person so signing is a legal voter.

■ Ark. Code Ann. § 7-9-109 (Supp. 1991), after setting forth the form of verification, provides that the forms are not mandatory, and if substantially followed, shall be sufficient, disregarding clerical and merely technical errors.

■ In *Kirk* v. *Hartlieb*, 193 Ark. 37, 97 S.W.2d 434 (1936), it was held that an affidavit is a written statement which is affirmed or sworn to by some person legally authorized to administer an oath or affirmation. The process requires concurrent action on the part of the affiant and the authorized officer.

■ Ark. Code Ann. § 21-14-111 (Supp. 1991), provides in part:

> (a) It is unlawful for any notary public to witness any signature on any instrument unless the notary either: 1) witnesses the signing of the instrument and personally knows the signer, or is presented proof of the identity of the signer; or 2) recognizes the signature of the signer by virtue of familiarity with the signature.

The Master heard testimony over three days from twenty-four witnesses. The Master found that hundreds of incomplete petitions were turned in by canvassers. In some instances the petitions had been signed by the canvasser but not notarized, in other instances the petitions were neither signed nor notarized. Ms. Paula Jameson testified that she signed petitions which other

canvassers had circulated but had failed to sign. These petitions were then notarized by Ms. Lynetta Anderson at Ms. Jameson's request. Altogether Ms. Jameson signed "about 130 petitions" as canvasser. Ms. Anderson testified she notarized over 100 petitions at Ms. Jameson's request which a canvasser had signed but failed to have notarized. Ms. Jo Ann Skinner testified that she notarized about 50 petitions without the canvasser appearing before her.

From the testimony of Dr. William Jones and Mr. Robert Sells, the Master found that numbers of petitions were signed by Dr. Jones and Mr. Sells as canvassers which were not signed by voters in the presence of either individual. Mr. Sells testified he took blank petitions to Sunday School teachers at Pulaski Heights Methodist Church and asked them to collect signatures which he later retrieved and signed as canvasser. At Dr. Jone's office signatures were collected in the reception room without Dr. Jones being present. There were other discrepancies in the methods by which petitions were circulated which we need not detail in this opinion.

From the testimony, the Master found that the prima facie verity of 100 petitions notarized by Ms. Andreson was destroyed because the canvassers, whom she did not know, did not appear before her. Those petitions contained 1,771 signatures. The Master found that the burden of proof was thereby shifted to the intervenors to establish the genuineness of those signatures. The same was true of 45 petitions notarized by Ms. Skinner, by which the verity of 772 signatures was destroyed. On similar grounds, 22 additional petitions were challenged rendering 188 signatures suspect.

Based on expert testimony the Master determined that 365 signatures were invalid, having been signed by someone other than the person whose name appeared. The bulk of these signatures appear to have been a case of one spouse signing the name of the other. In all, the Master found that 3,095 signatures were invalid, thus the petitions fell below the needed 55,713 by 2,458 signatures.

The efforts of the Intervener to rehabilitate some of the petitions by introducing the voter registration cards was found by the Master to be insufficient.

■ The Attorney General entreats us not to impose too rigid a standard of compliance with the requirement that signatures be obtained "in the presence" of the person circulating the petition. We see no need to attempt a definitive analysis of that term. Suffice it to say that where the signatures are gathered in areas and places while the canvasser is neither physically or proximately present, as found by the Master in this case, substantial compliance is lacking. The term "in the presence of" was recently considered in *Parks* v. *Taylor*, 283 Ark. 486, 678 S.W.2d 766 (1984), where we wrote:

> The other issue before us is the trial court's finding which threw out entirely several petitions because the affiant did not see the attestants sign. The petitioners claim that the chancellor was wrong because in some instances the *affiants merely said that they did not actually see all the persons sign in their presence.* Conceding that fact, we cannot find fault with the chancellor's action. Amendment 7 to the Arkansas Constitution provides: "Petitions may be circulated and presented in parts, but each part of any petition shall have attached thereto, the affidavit of the persons circulating the same, that all signatures *hereon were made in the presence of the affiant. . . ."* [Emphasis added.]

■ We have considered the Respondents' arguments carefully and are compelled to hold that the findings of the Master have not been shown to be clearly erroneous.

The petition is granted and an immediate mandate ordered, directing that the Cigarette and Tobacco Products Act be removed from the ballot, or, if that is no longer reasonably possible, the votes not be counted or considered.

NEWBERN, J., not participating.