The Honorable Randy Minton State Representative 880 Minton Road Ward, AR 72176-8618
Dear Representative Minton:
I am writing in response to your request for my opinion on the following questions:
 1. Per Public Law 8-10-302, Section (c)(iii): Does this mean the voter registration list? Is that the way the clerk determines the sufficiency of the signatures?
 2. Based on Public Law 7-9-109: If a petitioner does not use this form, does this disqualify the signatures?
 3. Is the petitioner collecting the signatures required to see each person sign the petition?
 4. If there is one person that the petitioner does not see sign the petition, does this invalidate the entire sheet?
RESPONSE
With respect to your first question, I do not believe the voter registration list is an appropriate resource to verify signatures, since property ownership and area of residence, not voter registration, are the applicable criteria to authenticate signatures. In my opinion, the answer to your second question is "no." So long as the form references the information required under A.C.A. § 8-10-302, the form will suffice as being in substantial compliance with the statutory requirement. In my opinion, the answer to your third question is "yes." I believe the answer to your fourth question is "no." The fact that the canvasser has not witnessed a particular signature undermines the "presumption of verity" attaching to the remaining signatures on the sheet, consequently shifting to the petition sponsors the burden of authenticating the remaining signatures.
Question 1: Per Public Law 8-10-302, Section (c)(iii): Does this mean thevoter registration list? Is that the way the clerk determines thesufficiency of the signatures?
Title 8 of the Arkansas Code deals with environmental law. Subsection8-10-302(a)(1) of the Code provides as follows:
 Due to the noise, air pollution, and traffic congestion caused by motor vehicle racing facilities, no motor vehicle racing facility may be constructed in this state after passage of this act without the consent of at least seventy-five percent (75%) of the property owners and seventy-five percent (75%) of the adult residents within three (3) miles of the outside boundary of the proposed facility.
Subsection 8-10-302(a)(2) dictates the form the property owners' consent must take:
 (A) Such consent shall be accomplished by signing petitions which shall be filed with the city clerk if the facility is to be located within the boundaries of any city or town or with the county clerk if the facility is to be located wholly or partially outside the boundaries of any city or town.
(B) The petitions shall indicate:
(i) The name;
(ii)(a) The residence address; or
 (b) If a nonresident property owner, the address or legal description of the property located within the three-mile area; and
(iii) The date of the signature.
Subsection 8-10-302(a)(2)(C)(iii) charges the city or county clerk with the duty of determining and certifying to the Arkansas Department of Environmental Quality "the sufficiency or insufficiency of the signatures." Subsection 8-10-302(a)(2)(C)(i) provides that "[t]he petitions must be verified pursuant to § 7-9-109."
Chapter 9 of title 7 of the Code deals with initiatives, referenda and constitutional amendments. Subsection 7-9-109(a) sets forth the form of an affidavit to be executed by the collector of signatures attesting (a) that all persons listed on a particular sheet of the petition signed in the collector's presence and (b) that the collector "believe[s] that each has stated his name, date of birth, residence or town of residence correctly, and that each signer is a legal voter of the State of Arkansas." Finally, A.C.A. § 7-9-109(b) provides:
 The forms herein given are not mandatory. Any petition which substantially follows these forms, disregarding clerical and merely technical errors, shall be sufficient.
As reflected in the above excerpts, A.C.A. § 8-10-302(a)(2)(B) recites different signature requirements for the petition than does A.C.A. §7-9-109(b): the former statute requires only that the signatory provide his or her name, residence address or, if a nonresident, property description, and date of signing; the latter drops the date-of-signing requirement, adds a date-of-birth requirement and dictates that the signer aver he is a legal voter.
I believe this conflict can be resolved by applying standard principles of statutory construction. As the Supreme Court observed in Bush v.State, 338 Ark. 772, 776, 2 S.W.3d 761 (1999): "It is axiomatic that the meaning of certain words or phrases cannot be determined in isolation, but must be drawn from the context in which they are used." Moreover, the Arkansas courts have long held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty, 336 Ark. 479, 484,987 S.W.2d 257(1999); Lawhon Farm Servs. v. Brown, 335 Ark. 272,948 S.W.2d 1 (1998); Citizens To Establish A Reform Partyv. Priest, 325 Ark. 257, 926 S.W.2d 432
(1996); Henson v. Fleet Mortgage Co., 319 Ark. 491,892 S.W.2d 250 (1995); Neely v. State, 317 Ark. 312, 877 S.W.2d 589 (1994);Death and Total Permanent Disability Trust Fund v. Whirlpool Corp.,39 Ark. App. 62, 837 S.W.2d 293 (1992). It is further an accepted rule of statutory construction that when a word in a statute is omitted or misused, it is the duty of the courts to disregard the error if the context plainly indicates the legislative intent. Johnson v. U.S. GypsumCo., 217 Ark. 264, 229 S.W.2d 671 (1950). It has also been stated that the court, in construing a statute, may reconcile two conflicting descriptions by striking out words in one so as to conform to the other.Heinemann v. Sweatt, 130 Ark. 70, 196 S.W. 931 (1917). See also Murphyv. Cook, 202 Ark. 1069, 155 S.W.2d 330 (1941) (holding that where intent was obvious, court would substitute 50,000 for 40,000, as the latter figure was merely a typographical error). See also, Sutherland, StatutoryConstruction § 47.37 (5th ed.). Finally, as the Supreme Court declared inScott v. Greer, 229 Ark. 1043, 1048-49, 320 S.W.2d 262 (1959):
 One of these rules, recognized and applied by this Court for many years, and applicable here, is: "Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect as clearer and more definite expressions of the legislative will." We have quoted the above rule from Hodges v. Dawdy, 104 Ark. 583, 149 S.W. 656. It was also recognized in Wiseman v. Ark. Util. Co., 191 Ark. 854, 88 S.W.2d 81. In 50 Am.Jur. 371 "Statutes" 367, the text states: "It is an old and familiar principle . . . that where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision." To the same effect see also 82 C.J.S. 720; and Crawford on "Statutory Construction" 189.
Applying these principles, I believe only the information called for in A.C.A. § 8-10-302(a)(2)(B) should be provided with the signature. This subsection is far more specifically tailored to a statute designed to protect unwilling property owners from noise pollution than is the general reference to A.C.A. § 7-9-109, which addresses the far broader category of initiatives, referenda and constitutional amendments. Moreover, with respect to the issue of noise pollution, it would be absurd to require an affected property owner to attest that he is a registered voter. The legal-voter requirement of A.C.A. § 7-9-109 exists solely to ensure that the petitioners comprise the percentage of voters required to place an item on the ballot pursuant to Ark. Const. amend. VII. By contrast, the petition described in A.C.A. § 8-10-302 is the election, and the only pertinent criteria for participating are property ownership or residence within a three-mile radius of the proposed race track.[1] It is totally irrelevant whether the petition signatory is or is not a legal voter. Indeed, as noted above, the statute expressly and quite logically anticipates that non-resident property owners, who could not possibly be legal voters, will participate. Given these facts, I believe A.C.A. §8-10-302(a)(2)(C)(i) is intended only to impose on canvassers the affidavit requirement set forth in A.C.A. § 7-9-109.
It follows from the foregoing that the voter registration lists would not be the appropriate resource for determining the sufficiency of petition signatures. One pertinent inquiry is whether a signatory owns property within the prescribed distance of the proposed track — a question the city or county clerk would presumably answer by checking the property records. With respect to the question of how many adults reside within the prescribed area, I assume the Census Bureau would be the most logical resource. I should note, however, that the factual question of how the clerk establishes the sufficiency of the signatures is one of fact that I am neither authorized nor equipped to address.
Question 2: Based on Public Law 7-9-109: If a petitioner does not usethis form, does this disqualify the signatures?
As reflected in my response to your previous question, I do not believe all of the information referenced in the form set forth in A.C.A. §7-9-109(a) is pertinent to the subject matter of A.C.A. § 8-10-302. Moreover, as noted above, A.C.A. § 7-9-109(b) expressly provides that "[t]he forms herein given are not mandatory" and that substantial compliance with the requirement will suffice. See Porter v. McCuen,310 Ark. 674, 678, 839 S.W.2d 521 (1992) (echoing this formulation); Ark. Op. Att'y Gen. No. 88-195 (opining that the "historical liberal construction of Amendment 7" supports concluding "that substantial compliance may be found where the information entered on the petition form reasonably affords a sufficient basis" for determining that the signer is qualified). In my opinion, then, failing to use the statutory form would not automatically disqualify the signatures.
Question 3: Is the petitioner collecting the signatures requiredto see each person sign the petition?
Section 7-9-109(a) is unambiguous in requiring that the canvasser be present when a petitioner signs the petition. The Arkansas Supreme Court addressed this requirement in Porter v. McCuen, 310 Ark. 674, 680,839 S.W.2d 521 (1992):
 The Attorney General entreats us not to impose too rigid a standard of compliance with the requirement that signatures be obtained "in the presence" of the person circulating the petition. We see no need to attempt a definitive analysis of that term. Suffice it to say that where the signatures are gathered in areas and places while the canvasser is neither physically or proximately present, as found by the Master in this case, substantial compliance is lacking. The term "in the presence of" was recently considered in Parks v. Taylor, 283 Ark. 486, 678 S.W.2d 766 (1984), where we wrote:
 The other issue before us is the trial court's finding which threw out entirely several petitions because the affiant did not see the attestants sign. The petitioners claim that the chancellor was wrong because in some instances the affiants merely said that they did not actually see all the persons sign in their presence. Conceding that fact, we cannot find fault with the chancellor's action. Amendment 7 to the Arkansas Constitution provides: "Petitions may be circulated and presented in parts, but each part of any petition shall have attached thereto, the affidavit of the persons circulating the same, that all signatures hereon were made in the presence of the affiant. . . ."
 We have considered the Respondents' arguments carefully and are compelled to hold that the findings of the Master have not been shown to be clearly erroneous.
Based on this pronouncement and the express language of the statute, I believe the canvasser must, at the very least, be "physically or proximately present" when the petitioner signs the form. I appreciate that this may pose a problem with respect to absentee property owners. However, the statute is clear in imposing the requirement. A canvasser may have to delegate to an out-of-state affiant the task of collecting the signature of an absentee property owner.
Question 4: If there is one person that the petitioner does not see signthe petition, does this invalidate the entire sheet?
The Arkansas Supreme Court likewise addressed this question in Parks v.Taylor, 283 Ark. 486, 490-91, 678 S.W.2d 766 (1984):
 In Sturdy v. Hall, 201 Ark. 38, 143 S.W.2d 547 (1940), we considered this very question and said:
 The circulator of the petitions is the sole election officer, in whose presence the citizen exercises his right to sign the petition. The circulator must take affidavit that each signature is genuine, and if this affidavit is shown to be false, the petition loses its prima facie verity.
* * *
 If, therefore, the circulator of a petition makes affidavit that the signatures are genuine which were not signed by the petitioner himself, he has made a false affidavit, and when it is shown that the affidavit attached to a particular petition is false, that petition loses the presumption of verity.
 Since the trial court found the affidavits false he was not wrong as a matter of law in excluding entirely the petitions of those affiants. At that point the burden was placed on the proponents of the petitions to accept as sufficient all the names on a petition where the circulator's affidavit was shown to be false. No argument is made that proof exists which would require us to set aside the trial court's decision. Therefore, a writ of certiorari would not be in order.
In Sturdy, the Court likewise stressed that the effect of a false affidavit is not automatically to invalidate all signatures on the sheet, but rather to invalidate the presumption of authenticity:
 [S]uch a petition loses the presumption of verity, and all the names appearing on such a petition would be stricken unless it were otherwise shown that certain signatures on the petition were valid and should be counted. . . .
Accordingly, if a canvasser failed to witness one signature on a sheet, all remaining signatures would need to be independently authenticated.See A.C.A. § 14-14-915 (where petition contains evidence of forgery or impersonation, "the prima facie verity of the circulator's affidavit shall be nullified and disregarded, and the burden of proof shall be upon the sponsors of petitions to establish the genuineness of each signature"); Roberts v. Priest, 334 Ark. 503, 512, 975 S.W.2d 850 (1998) ("When an affidavit is demonstrated to be false, a petition loses its prima facie validity. . . . However, the challenger must also prove that the falsity was conscious and more than inadvertence.")
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] Assuming more than 75% of affected property owners sign the petition and the clerk certifies the sufficiency of the signatures, the Arkansas Department of Environmental Quality will issue a permit for the race track's construction. A.C.A. § 8-10-303.