The Honorable Jan Judy State Representative 202 W. Maple Street Fayetteville, Arkansas 72701-4132
Dear Representative Judy:
I am writing in response to your request, on behalf of the Fayetteville City Attorney, on two questions regarding the limits on municipal millage levies. Specifically, you state the following facts and pose the following two questions:
 The City of Fayetteville is considering whether or not to adopt an operational millage pursuant to A.C.A. § 26-25-102. There is already a levy of 0.8 mill for the city police and fire pension boards (0.4 mill for each board).
 The city voters recently decided to levy one mill for the city library, thereby removing the mill that had been paid to the county.[1]
 The question concerns Article 12, § 4 of the Arkansas Constitution, which prohibits cities from levying property tax "to a greater extent, in one year, than five mills on the dollar of the assessed value of the same."
 1. Does millage assessed for police and fire pension authorized by Amendment 31 and/or city libraries authorized by Amendment 30 count against the constitutional limit of five mills?
 2. Since the city (through the county) levies 0.8 mills for pensions and 1 mill for the city library, are we constitutionally limited to 3.2 mills for all other purposes?
You have enclosed with your request a letter and a memorandum from the Fayetteville City Attorney, who concludes that the police and fire pension millage levied pursuant to Amendment 31 "does count against the City's allowed five mills." He also notes he can find "no clear evidence nor language in Amendment 30 nor Amendment 31 that changed the constitutional limit of 5 mills by adding additional mills the City could levy that would not count toward its five mill constitutional limit."
RESPONSE
It is my opinion that the answer to each of your questions above is "no." In my opinion the millages levied under the authority of Amendments 30 (for city libraries) and Amendment 31 (for police and fire pensions) donot "count" against the constitutional limit of five mills set in art. 12, § 4. In that sense the City is not limited to 3.2 mills for purposes other than these.
Question 1 — Does millage assessed for police and fire pension authorizedby Amendment 31 and/or city libraries authorized by Amendment 30 countagainst the constitutional limit of five mills?
In my opinion the answer to this question is "no."
Article 12, § 4 of the Arkansas Constitution provides in relevant part:
 No municipal corporation shall be authorized to pass any law contrary to the general laws of the state; nor levy any tax on real or personal property to a greater extent, in one year, than five mills on the dollar of the assessed value of the same. Provided, that, to pay indebtedness existing at the time of the adoption of this Constitution, an additional tax of not more than five mills on the dollar may be levied.
(Emphasis added).
This portion of article 12, § 4 was contained as a part of the original Constitution of 1874.[2] It was noted in Dean Ralph C. Barnhart's article, Barnhart, "A New Constitution for Arkansas?" 17 Ark. L. Rev. 1 (Winter 1962-63), that article 12, § 4 was one of the provisions of the Arkansas Constitution of 1874 that was adopted in reaction to the state's recent experience with reconstruction and the "heavy taxes" levied during that period. In describing the 1874 constitution, Dean Barnhart noted:
 The General Assembly itself was limited in the rate of taxes that might be levied, as were counties and municipalities, and loan of public credit by state, county, city and or other municipalities was prohibited. . . . In short, the constitution reflected distrust of the executive, the legislative and the judicial branches of the government and kept controls to a very great extent in the hands of the people. . . . The constitution of 1874 was a reaction against the government which preceded it with all of the abuses and dissatisfactions fresh in mind. The eyes of the draftsmen were on an immediate and unhappy past and not upon the visions of a new world.
Id. at 4 (footnotes omitted).
One case interpreting article 12, § 4, which is particularly relevant for purposes of your question is Adamson v. City of Little Rock,199 Ark. 435, 134 S.W.2d 558 (1939). In Adamson, a taxpayer brought a legal action to enjoin the extension and collection of a five-eights of a mill property tax for the use of the City's Firemen's Pension and Relief Fund and a one-mill tax for the benefit of the City's Policemen's Pension and Relief Fund. The local electors had approved the levies at the general city election under the authority of state statutes. The taxpayer alleged that article 12, § 4 prevented the levy because the City of Little Rock had already voted the full five mills authorized by article 12, § 4, and did not propose to displace any exiting portion of the five mills with the new one and five-eights mills levied by the electors.
The Arkansas Supreme Court reluctantly agreed, stating:
 It is with profound regret that we reach the conclusion that the objection is well taken. The wisdom and the necessity of offering inducements to worthy men, brave and true, to enter and to continue in these hazardous callings, is obvious. No city under modern conditions can operate without both a fire and a police department; but relief to these employees of the city must be afforded in a manner authorized by the Constitution.
* * *
 The inhibition of the Constitution is not directed solely against the city council, but is directed also against any agency acting for the city, whether that agency be its council or its electors. The municipality is denied the right to levy ad valorem taxes in excess of 5 mills for any purpose, except to pay indebtedness existing at the time of the adoption of the Constitution, and this inhibition may not be contravened by permitting one agency to levy 5 mills and another agency to make an additional levy.
199 Ark. at 436, 439.
The Supreme Court's ruling was handed down on December 4, 1939. Two days later, an editorial was published in the Arkansas Gazette discussing the effects of the Adamson case. The editorial concluded by stating the following:
 The problem of finding the needed pension revenue may be difficult. It is to be hoped that a practical plan can be found short of seeking amendment of the state constitution. Even if a favorable vote at the polls could be counted on that method would be slow and involve labor and expense, first to circulate initiative petitions and afterward to conduct a statewide campaign on behalf of the proposed amendment. But some way must be found and the two cities should themselves take the lead in seeking it.
"Pensions for Policemen and Firemen," Arkansas Gazette, December 6, 1940, page 4, col. 2.
Several months later, on July 3, 1940, the following report appeared in the same publication:
 A proposed constitutional amendment permitting cities to vote a two-mill pension for firemen and policemen was assured a place on the November general election ballot yesterday.
 Secretary of State C.G. Hall said petitions seeking a vote on the proposal filed by Night Police Chief R.L. Allen of Little Rock Monday, contained 17,700 signatures.
 "Since only 14,040 signatures of electors are required by the constitution, you are notified that your petition is adequate," Mr. Hall wrote in acknowledging receipt of the petitions. . . .
"Police and Fire Pension Plan Qualifies for Ballot," Arkansas Gazette, July 3, 1940, p. 13, col. 1.
The proposed amendment was approved by the voters at the general election on November 5, 1940 and ultimately became Amendment 31 to the Arkansas Constitution. That amendment provides:
 After consent of the majority of those voting on the question at any general or special election in cities of the first or second class, the cities may annually thereafter, levy a tax on the assessed value of real and personal property, not to exceed two mills on the dollar, from which there shall be created a Fund to pay Retirement Salaries and pensions to policemen and firemen theretofore or thereafter earned, and pensions to the widows and minor children of such, as may be provided by law. The annual levy for the Policeman's Retirement Salary and Pension Fund shall not exceed one mill on the dollar, and the annual levy for the Fireman's Retirement Salary and Pension Funds, shall not exceed one mill on the dollar. The manner of such levy of the tax, and the eligibility for the retirement salaries and pensions, the several amounts thereof and when payable, shall be such as may be provided by law.
The General Assembly passed legislation in 1941, after adoption of this amendment, to enable its provisions. See Acts 1941, Nos. 14 and 16, currently codified at A.C.A. §§ 24-11-812 and 24-11-404.
Constitutional amendments are liberally construed to accomplish their purposes. U.S. Term Limits, Inc. v. Hill, 316 Ark. 251, 872 S.W.2d 349
(1994), citing Porter v. McCuen, 310 Ark. 674, 839 S.W.2d 521 (1992). In construing statutes, as well as provisions of the Arkansas Constitution, the court:
 . . . may look to the history of the times, the conditions existing at the time of the adoption of the amendment, in order to ascertain the mischief to be remedied and the remedy adopted, together with the general spirit of the times and the prevailing sentiment among the people.
Huxtable v. Crawfordsville Special School District, 181 Ark. 533, 535,26 S.W.2d 577 (1930) citing Lybrand v. Wafford, 174 Ark. 298, 296 S.W. 729
(1927).
The same rules of construction and interpretation apply to both constitutional provisions and statutes. Gazaway v. Greene CountyEqualization Bd., 314 Ark. 569, 864 S.W.2d 233 (1993). It has been stated with regard to construction of statutes:
 "In seeking to ascertain the legislative intent where the language of the statute is ambiguous, the courts will take into consideration all the facts and circumstances existing at the time of, and leading up to, its enactment, such as the history of the times, the habits and activities of the people, the state of the existing law, and the evils to be remedied by the new act." (59 C.J. 1014.) And again: "While the intent of the legislature is to be found primarily in language of the statute, where such language is vague, ambiguous, or uncertain, the court may look, not only to language but to the subject-matter of the act, the object to be accomplished, or the purpose to be subserved; it may also look in this connection to the expediency of the act, or its occasion and necessity, the remedy provided, the condition of the country to be affected by the act, the consequences following upon its enactment, or various extrinsic matters which throw some light on the legislative intent."
Holt v. Howard, 206 Ark. 337, 340, 175 S.W.2d 384 (1943) quoting 59 Corpus Juris, 958.
Although Amendment 31, involving police and fire pensions, does not specifically address whether its provisions are supplemental to or "over and above" the five-mill limit set out in article 12, § 4, in my opinion it is clear, from a review of the history of the adoption of Amendment 31, that the Amendment was adopted to remedy the article 12, § 4 obstacle to police and pension funding as announced in the Adamson case.
In addition, it appears that a change in statutory law reflects the fact that constitutionally authorized special millages, like those authorized by Amendment 31, may be levied over and above the art. 12, § 4 five-mill limit. In this regard, A.C.A. § 26-25-102, originally passed in 1883, provides in pertinent part that:
 (a) The amount of taxes which may be levied for general purposes in any one (1) year by the constituted authorities of any city or town under the provisions of Arkansas Constitution, Article 12, Section 4, may equal, but not exceed, the maximum amount of levy at any time fixed under this section of the Arkansas Constitution.
It has been stated that "[i]t is clear that [ACA § 26-25-102] tracks Article 12 of the Arkansas Constitution." Holt v. City of Maumelle,302 Ark. 51, 786 S.W.2d 581 (1990). Despite this characterization, I should note that this statute was amended substantially in 1963 to deviate somewhat from article 12, § 4. See Acts 1963, No. 480, § 1. Article 12, § 4 does not restrict its five-mill limit to "general taxes." It states merely that no municipal corporation shall "levy any tax on real or personal property to a greater extent, in one year, than five mills on the dollar. . . ." (Emphasis added). Similarly, as originally enacted in 1883, the statute above did not restrict is applicability to "general taxes," stating only that: "[t]he amount of taxes levied in any one year by the constituted authorities of any city or town shall not exceed the amount specified in this section, viz: For all city or town purposes,
five mills on the dollar. . . ." (Emphasis added). In 1963, the legislature passed Act 480 of 1963, amending the statute to provide that "[t]he amount of taxes which may be levied for general purposes in any one (1) year by the constituted authorities of any city or town . . . may equal, but not exceed, the maximum amount of levy at any time fixed under said Article 12, § 4." The change in statutory language may reflect the fact that later constitutional amendments authorize city millages for special purposes and that these special constitutionally authorized millages are not included in the article 12, § 4 five-mill limit.
In my opinion, therefore, for all the foregoing reasons, the millage levied under Amendment 31 for police and fire pension funds does not "count" against the five-mill limit contained in article 12, § 4.[3]
The historical evidence is not as compelling as to Amendment 30, which authorizes city library millages, but in my opinion the same conclusion applies for the same reason and for other reasons. Amendment 30, regarding city libraries, was originally proposed by initiative petition of the people and was submitted at the same election (the general election of 1940), as was Amendment 31 regarding police and fire pensions. Obviously, the article 12, § 4 impediment would have been as much an obstacle to the funding of libraries in cities already levying the five-mill limit as it was to the funding of police and fire pensions in such cities. In addition, Amendment 30 was amended as recently as 1992 by Amendment 72 to the Arkansas Constitution. Section 1 of Amendment 30 now provides as follows:
 Whenever 100 or more taxpaying electors of any city, having a population of not less than 5,000, shall file a petition with the Mayor asking that an annual tax on real and personal property be levied for the purpose of maintaining and operating a public city library and shall specify a rate of taxation not to exceed five mills on the dollar, the question as to whether such tax shall be levied shall be submitted to the qualified electors of such city at a general or special election. Such petition must be filed at least thirty days prior to the election at which it will be submitted to the voters. The ballot shall be in substantially the following form:
 For a ________ mill tax on real and personal property to be used for maintenance and operation of a public city library.
 Against a ________ mill tax on real and personal property to be used for maintenance and operation of a public city library."
(Emphasis added).
As can be seen from the language above, Amendment 30 currently authorizes cities to levy five mills for library maintenance and operation alone. Amendment 30, as originally adopted, contained a one-mill limit for the purpose of maintaining a public city library. Amendment 72 raised this original one-mill limit to five mills. In addition, Amendment 72 added a new section authorizing a three-mill levy for capital improvements or construction of a public city library. See Amendment 30, § 5. Amendment 30, therefore, as amended by Amendment 72, authorizes a city to levy a total of eight mills for library purposes alone. This authority, of course, exceeds the five-mill limit set out in article 12, § 4. It is difficult to conclude, therefore, that library millages levied under authority of Amendment 30, as amended by Amendment 72, are subject to the article 12, § 4 five-mill limit.
In my opinion, therefore, the answer to your first question is "no," with regard to both Amendment 30 and Amendment 31 levies. These levies do not "count" against the article 12 § 4 limit.
Question 2 — Since the city (through the county) levies 0.8 mills forpensions and 1 mill for the city library, are we constitutionally limitedto 3.2 mills for all other purposes?
No. See discussion in response to Question 1 above.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] This statement presumably has reference to Amendment 38, § 2, governing county library taxes, which states that a county library tax "shall not be levied against any real or personal property which is taxed for the maintenance of a city library, pursuant to the provisions of Amendment 30. . . ." See also Ops. Att'y. Gen. 98-073 and 93-395.
[2] Three additional paragraphs were later added to the section by Amendment 10, declared adopted in 1925, but they are not relevant for our purposes.
[3] The Fayetteville City Attorney cites several cases as authority for the proposition that the five-mill limit of article 12, § 4 may apply to Amendment 31 levies, including McLaughlin, Trustee v. Lovett,204 Ark. 708, 163 S.W.2d 826 (1942); Schuman v. Walthour, 204 Ark. 634,163 S.W.2d 517 (1942) and Sherrill v. Faulkner, 200 Ark. 1006,142 S.W.2d 229 (1940). None of these cases is dispositive of the issue and in my opinion two of them, along with a separate case, actually provide some support for the conclusion that the article 12, § 4 limit does not apply to police and fire pension millages levied under Amendment 31. See McLaughlin, supra, (1942) (stating that: "[t]hat part of Act 30 of 1939, which sought to enable cities and towns to levy a tax above the five mill limit, for all purposes as provided by the Constitution of Arkansas at that time, was declared by this court unconstitutional in Adamson. . . . In 1940, amendment No. 31 . . . was enacted and put into effect. Under its provisions, cities and towns of the first and second class were permitted to vote a tax not to exceed two mills on the dollar [for a police and fire pension fund])." (Emphasis added). See also Schuman,supra, (which although decided in 1942, after the adoption of Amendment 31, looked backward, to facts arising prior to Amendment 31's adoption, with regard to tax delinquent lands transferred due it part to the unlawful tax levied in excess of the five-mill limit prior to the adoption of Amendment 31). In addition, in Cross v. Graham,224 Ark. 277, 272 S.W.2d 682 (1954), the court discussed the Adamson case, stating: "[t]his Court, in the case of Adamson v. City of Little Rock . . ., declared invalid Act 25 of the Acts of 1939, which undertook to set up a system of pensions for retired policemen. Thereafter, Amendment 31 tothe Arkansas Constitution was proposed and adopted, and under the authority of said amendment, the 1941 Legislature then enacted Act 67." (Emphasis added). The above cases, in my opinion clearly reflect the evolution and change in the law after the Adamson decision.