The Honorable John Burris State Representative
923 West Prospect Avenue Harrison, Arkansas 72601-3261
Dear Representative Burris:
This is my opinion on your question aboutAct 722 of 2007, codified at A.C.A. §§ 25-18-701 to-703 (Supp. 2009), which provides that "[a]ll state agencies shall . . . permit the use of . . . electronic signatures." A.C.A. § 25-18-701.
You ask whether Act 722 should be interpreted to allow electronic signatures on initiative, referendum, and candidate petitions.
In my opinion, Act 722 does not require the Secretary of State to accept electronic petition signatures. Constitutional and statutory requirements for initiative and referendum petition signatures likely make the use of electronic signatures on such petitions impossible or impracticable in any event.
RESPONSE
The primary operative language of Act 722, quoted above, is broad and unconditional on its face. It might be read expansively to require all agents and instrumentalities of the state to accept any and all electronic signatures submitted. In my opinion, however, it is subject to narrower interpretation in at least two ways.
First, in my opinion, the act probably does not apply to the Secretary of State. *Page 2 
State-level initiative, referendum, and candidate petitions[1] are filed with the Secretary of State.[2] As quoted above, Act 722 applies to "[a]ll state agencies." A.C.A. § 25-18-701.
For purposes of your inquiry, then, the question becomes whether the Secretary of State is a "state agency" as that term is used in Act 722. The act does not define the term. But the Uniform Electronic Transactions Act defines it to exclude "elected constitutional officers," like the Secretary of State. A.C.A. § 25-32-102(16). When a later-enacted law uses, without definition, a term that is defined in an earlier-enacted law dealing with the same general subject matter, it is not unreasonable, in my opinion, to conclude that the General Assembly used the term to mean the same thing in both laws. Cf. Weiss v. Maples,369 Ark. 282, 286-287, 253 S.W.3d 907 (2007) ("statutes relating to the same subject are said to be in pari materia and should be read in a harmonious manner, if possible").[3]
Absent clarifying legislation, this question can be definitively answered only by the courts. I think it is likely, however, that a court would hold that the Secretary of State is not a state agency to which Act 722 applies.
The second narrowing element of Act 722 is that, as your request notes, it does not consist of the quoted language only. Rather, it also requires the director of the Department of Information Systems to establish *Page 3 
 standards and policies governing the use . . . of electronic records [and] electronic signatures, including without limitation, the type of electronic signature required, the manner and format in which the electronic signature must be affixed to the electronic record, the identification of the author of an electronic record, and the verification of authentication of the signature of the author of an electronic record. . . .
A.C.A. § 25-18-702(a)(1), (b)(3).[4]
The act permits a state agency to use the DIS standards and policies or develop its own. See A.C.A. § 25-18-703.
These provisions demonstrate that the act was not intended to compel acceptance of electronic signatures of all types, at all times, for all purposes. Instead, in my view, the act requires[5]
a state agency to which it applies to accept a signature only when the signature complies with standards and policies that protect the state's interests in identification, authentication, and the like.[6]
A petitioner must also, of course, comply with all other laws applicable to signatures, some of which probably will make the use of electronic petition signatures impossible or impracticable. These laws are, for the most part, designed to protect the same state interests in identification, authentication, and similar matters as the standards and policies for electronic signatures.
A person circulating an initiative or referendum petition must attach to the petition an affidavit that states, among other things, that the signatures were "made in the presence" of the affiant. Ark. Const. art. 5, § 1; see also
A.C.A. § 7-9-109(a) *Page 4 
(affidavit form contains representation that each signatory signed in presence of affiant). The Supreme Court of Arkansas has repeatedly disallowed petition signatures accompanied by an affidavit falsely stating that the affiant was present at the signatures' making. See, e.g., Roberts v. Priest,334 Ark. 503, 975 S.W.2d 850 (1998). The court has held that the canvasser must be "physically or proximately present" when a person signs. Porter v. McCuen,310 Ark. 674, 680, 839 S.W.2d 521 (1992).
In addition, a statute provides that a voter "may sign an initiative or referendum petition in his or her own proper handwriting, and not otherwise. . . ." A.C.A. § 7-9-103(a)(1) (Repl. 2007).
Electronic signatures that are made both in one's own handwriting and in the presence of the person collecting the signature are not, of course, unusual. Examples include those collected on electronic signature pads by cashiers in connection with credit-card sales and by drivers on package delivery acknowledgements.
I expect, however, that it would generally be economically or otherwise infeasible, or simply pointless, to circulate an initiative or referendum petition using devices that would allow handwritten signatures to be collected in the canvasser's presence and in compliance, if that is even possible, with all other applicable law and electronic signature standards and policies. I imagine instead that your question contemplates the use of petitions circulated by electronic mail, by reference to a web site, or by some other method not involving both a canvasser's physical presence and the signatory's handwriting. Due to the presence and handwriting requirements, such methods may not be used in connection with initiative or referendum petitions.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] There is no indication that Act 722 was intended to apply to the local officials with whom local-level petitions are filed. The act applies only to "state agencies." The word "person" is defined in the Arkansas Electronic Records and Signatures Act, A.C.A. § 25-31-103(3) (Repl. 2002), and in the Uniform Electronic Transactions Act, A.C.A. § 25-32-102 (12) (Repl. 2002), and the terms "governmental agency" and "state agency" are defined in the UETA, A.C.A. § 25-32-102(9) and (16), all in ways that demonstrate the General Assembly's ample ability to make electronic signature legislation applicable to local governmental bodies and officials when desired. I conclude that Act 722 does not apply to local governmental bodies or officials.
[2] See
Ark. Const. art. 5, § 1, and A.C.A. §§ 7-9-101 to-125 (Repl. 2007, Supp. 2009) (initiative and referendum petitions); and A.C.A. §§ 7-7-103(b)(2) (Supp. 2009) and7-6-102(a)(1) (Repl. 2007) (state and district candidate petitions),7-10-103(c)(1)(A)(i) (Supp. 2009) (judicial candidate petitions),7-8-302(5)(B), (6)(A) (Supp. 2009) (presidential and vice presidential candidate petitions), and 7-9-304(a)(1) (Repl. 2007) (constitutional convention delegate candidate petitions).
[3] Similarly, Act 722 does not define "electronic signature," another term defined in the UETA. See
A.C.A. § 25-32-102(8). The General Assembly's failure to define this fundamental term in Act 722 reinforces my conclusion that it relied on the definitions in the UETA, including the definition of "state agency."
[4] The Department of Information Systems and the Department of Finance and Administration have jointly issued a Policy Statement on the Use of Electronic Signatures by State Agencies and an Electronic Signature Standard. See Documents SS-70-001 and-011, accessible at http://www.dis.arkansas.gov/policiesStandards/Pages/Standards.aspx
(last visited July 23, 2010).
[5] Arkansas laws adopted before Act 722 allow governmental bodies to accept electronic signatures but, with one limited exception, do not require it. See Act 718 of 1999, the Arkansas Electronic Records and Signatures Act, A.C.A. §§ 25-31-101 to-105 (Repl. 2002, Supp. 2009); andAct 905 of 2001, the Uniform Electronic Transactions Act, A.C.A. §§ 25-32-101 to-120 (Repl. 2002, Supp. 2009).
[6] Nothing in Act 722 suggests that it is intended to, and in my opinion the act does not, require acceptance of a signature that does not comply with other law that imposes mandatory requirements relating to the signature. And Act 722 cannot, of course, affect any constitutional law governing a signature. *Page 1