MONDIER v. MEDLOCK.

4-7488                                              182 S. W. 2d 869

Opinion delivered October 23, 1944.

*Hugh M. Bland,* for appellant.

*C. R. Starbird* and *R. S. Wilson,* for appellee.

GRIFFIN SMITH, Chief Justice. Sections 1 and 2, article 7, Act 108, approved March 16, 1935, (Pope's Digest, Secs. 14147 and 14148)[1] authorized voters of designated political subdivisions to petition ''the judge of the County Court'' to call an election to determine whether spirituous, vinous, or malt liquors shall be sold, bartered, or loaned. A proviso is that the election shall not be held on the same day with any regular political election, nor within thirty days next preceding or following such regular political election.[2]

May 22, 1944, Medlock and others, constituting more than fifteen percent of the electors of Crawford County, petitioned for a so-called ''wet or dry'' election to be held according to the provisions and mandatory requirements of [Initiated] Act No. 1, adopted Nov. 3, 1943.

Approximately a week later the Court found the petition to be sufficient and ordered that an election be held June 27. Result was a victory for the ''drys'', a court finding to that effect having been made July 6.

The first of two 1944 democratic primaries was held July 25th. The petitioned election, therefore, was within thirty days of the political event. Contention is that Act 108 is controlling as to time, hence the June 27 vote was ineffective.

---

[1] Popularly referred to as the Thorne Liquor Act.

[2] The concluding sentence of the mandate of Sec. 2 is: "All elections provided for in this Act shall be held by such officers as would be qualified to hold elections for county officers, and they shall be selected in the same way, and all elections provided for herein shall be held in accordance with the provisions of the general election laws of the State, except that they shall not be held on the same day with any regular political election, nor within thirty days next preceding or following any such regular political election."

Specifically, appellant's contention is that Initiated Act No. 1 amended, but did not repeal, the 1935 legislation. It is urged that language in the Initiated Act declaring it to be cumulative expresses an intent by the people to preserve existing statutes not in conflict with the new provisions; and, since no conflict is shown, the *pari materia* rule applies.

It appears to have been assumed, in *Yarbrough* v. *Bearden,* and *Phillips* v. *Foreman,* 206 Ark. 553, 177 S. W. 2d 38, that the Act confers duties on the court, as distinguished from the judge. See, also, *Phillips* v. *Matthews, County Judge,* 203 Ark. 100, 155 S. W. 2d 716; *Bennett* v. *Moore,* 203 Ark. 511, 157 S. W. 2d 515.

The Phillips-Matthews case, dealing with a controversy relating to the right to call an election under provisions of Act 108, contains the following sentence: "It is, of course, elementary that the County Court had no jurisdiction to make the order it did on the day it was made. The jurisdiction of said County Court in the premises was wholly dependent upon the statute [which specifically provides] that the election order should be made at the next regular term after receiving said petitions."

Here, it seems, is a holding that in effect construes the term "judge of the County Court" as used in Act 108, to mean the County Court sitting at an authorized time, for the purpose of passing upon matters in respect of which there is no discretion. It was mandatory, says the opinion, that an election call be withheld until the next regular term. There is an absence of discretion. The Court cannot select the election date. It must be held ". . . on some day named in said petition not earlier than 60 days after said application is lodged with the judge of said Court," subject to the limitation as to regular political elections.

The Initiated Act provides for an election. The requirement of Act 108 that petitions be signed by thirty-five percent of the qualified electors gives way to fifteen percent, and the question to be determined is whether

intoxicating liquors may be sold within the designated area. The County Court (which for the purpose of the Act "shall be open at all times") must, within ten days, publicly hear protests concerning sufficiency of the petition. If judgment sustains proponents, a special election is ordered ". . . not earlier than twenty days nor later than thirty days after the rendition of the Court's decision at said public hearing."

Other matters of substance and some minor details distinguish election proceedings under the Initiated Act from provisions of Act 108. The formulae promulgated in the initiated measure is quite clear, and it is complete. Nothing essential to an election is omitted. The test of sentiment for or against sale of intoxicating liquors must be made (when preliminaries have been complied with) not earlier than twenty days nor later than thirty days after the petition has been adjudged sufficient. Interested parties do not, as under Act 108, fix the election date. This is done, at the Court's discretion, within a permissive period. There is no reference to other elections; no suggestion of a purpose to bring forward any restrictions the General Assembly placed in Act 108.

Since sections 1 and 2 of the Initiated Act are not ambiguous, and no essential constituent of an election is left to intendment, it must be held that the restrictive provisions of Act 108 were purposely eliminated.

Affirmed.