Gocio *v.* Harkey.

4-8158                                   200 S. W. 2d 977

Opinion delivered March 31, 1947.

Rehearing denied April 28, 1947.

*John W. Atkinson* and *Rowell, Rowell & Dickey,* for appellant.

*Y. W. Etheridge,* for appellee.

Minor W. Millwee, Justice.  On September 30, 1946, appellee, Glenn Harkey, and 716 other persons, claiming to be more than 15 per cent. of the qualified electors of Lincoln county as shown on the county poll tax records, filed a petition in county court praying that a countywide election be called under Initiated Act No. 1 of 1942 (Acts 1943, p. 998) to determine whether license should be granted for the manufacture, sale, bartering, loaning, or giving away of intoxicating liquors in the county. Pursuant to an order of the County Court, a public hearing was held on October 7, 1946, to determine the sufficiency of the petition.

The County Court found that the petition contained 717 signers, which number constituted more than 15 per cent. of the 2,638 qualified electors as shown by the poll tax records of the county, and ordered a special election to be held on October 29, 1946, in accordance with the prayer of the petition. The record reflects that appellants, Joseph Gocio and J. R. Prewitt, appeared as protestants at the hearing in County Court, but filed no written pleadings or exceptions to the order made.

On October 14, 1946, appellants filed an affidavit and prayer for appeal to the circuit court which was granted. Prior to the trial in circuit court each side, with the court's permission, named a checker and these checkers were appointed by the court to canvass the petition of appellees and examine all available records bearing on the qualifications of the persons signing the petition. After a thorough investigation, the two checkers filed their report which was by stipulation made an exhibit in the hearing in circuit court, with the understanding that either side might challenge any part thereof. The qualifications of 283 of the 717 signers of the petition were found questionable in this report, but

one of the checkers refused to agree to paragraphs 5 and 8 of the report which involved the validity of 42 of the signatures considered questionable by the other checker.

It was also stipulated at the trial in circuit court that there were 2,638 names on the official poll tax list filed by the collector in the county clerk's office for the year 1944. Under the proof offered by appellants, 57 names were stricken from the petition for various reasons and the court refused to strike 116 other names challenged by appellants in pursuance of the investigation and report of the checkers. The court found that the petition contained 660 valid signatures, which number was in excess of 396 required by law. The appeal of the protestants (appellants) was dismissed and the County Court was directed to proceed with the election in accordance with the provisions of the Initiated Act.

Appellants have waived all but two of the 17 assignments of error set out in their motion for new trial. The first assignment now relied upon for reversal is that the trial court erred in placing the burden of proof on appellants. Section 2918 of Pope's Digest provides that the circuit court shall try all appeals from the county court *de novo* as other cases at law. In construing this statute this court has held that the circuit court on appeal must try the cause as if it had been originally brought in that court in the first instance. *Batesville* v. *Ball,* 100 Ark. 496, 140 S. W. 712, Ann. Cas. 1913C, 1317; *Carpenter* v. *Leatherman,* 117 Ark 531, 176 S. W. 113. Appellants rely on this statute and both parties rely on § 5122, Pope's Digest, which provides: "The burden of proof in the whole action lies on the party who would be defeated if no evidence were given on either side."

After the appeal was lodged in circuit court, appellants filed a motion alleging generally that the petition did not meet the requirements of the Initiated Act; that numerous signatures were not genuine; and that 15 per cent. of the qualified electors of the county did not sign the petition. This motion did not suggest any particular requirement of the Initiated Act which the petitioners

had not complied with, nor did it challenge any particular signature as being invalid for any reason. Under this state of the record, it is insisted by appellants that it was incumbent on appellees to identify the 35 sections of the petition by the testimony of the respective canvassers and to show by them that all the signatures were genuine and executed in their presence. We do not agree with appellants in this contention.

It may first be pointed out that a proceeding under Initiated Act No. 1 of 1942 for calling a local option election does not necessarily partake of the nature of an adversary proceeding such as is involved in an ordinary lawsuit. In enacting this law the people merely provided a method whereby a certain percentage of the qualified electors as shown on the poll tax records of a county might call an election to determine the sentiment of the voters on the liquor question. The election machinery is set in motion by an *ex parte* petition of electors and the proceeding may, or may not, become an adversary one.

We agree that the burden of proof is on petitioners in both the county court and the circuit court, on appeal, but this burden is discharged and a *prima facie* case made when a petition has been circulated, signed and filed in the form and manner shown in the instant case. There is attached to each section of the petition filed in the case at bar an affidavit of the circulator, or canvasser, in the following form:

"STATE OF ARKANSAS } ss.
COUNTY OF LINCOLN }

"I, H. G. Gassoway of Gould, Ark., being first duly sworn, state that Glen Harkey, (and 29 other persons) signed the foregoing petition, and each of them signed his or her name thereto in my presence. I believe that each one has stated his or her name, residence, postoffice address and voting precinct correctly, and that each of them is a legal voter of Lincoln County, Arkansas.

"Subscribed and sworn to before me this 11th day of March, 1946.

"H. G. Gassoway,
Canvasser.

"John G. Fish

N. P.   Clerk   Judge   J.P.

"(NOTARIAL SEAL)"

We have held that Initiated Act No. 1 of 1942 is complete in itself and that it is not necessary that a petition thereunder comply with the I. & R. Amendment to the Constitution and the enabling acts carrying it into effect. *Johnston* v. *Bramlett,* 193 Ark. 71, 97 S. W. 2d 631; *Mondier* v. *Medlock,* 207 Ark. 790, 182 S. W. 2d 869. In *Winfrey* v. *Smith,* 209 Ark. 63, 189 S. W. 2d 615, the petition was not verified to comply with the provisions of § 13285, *et seq.,* Pope's Digest, which are parts of the enabling act to the first I. & R. Amendment. We there held that it was unnecessary to verify the petition where the canvasser came into open court and testified to the genuineness of the signatures.

However, in those cases where the petition is verified by the circulator, as in the case at bar, we think the situation is analogous to that presented in the case of an initiative petition filed under the I. & R. Amendment and the enabling acts thereto. In discussing the effect to be given the affidavit of the circulator of an initiative petition in such cases in *Sturdy* v. *Hall, Secretary of State,* 201 Ark. 38, 143 S! W. 2d 547, this court said: "The circulator of a petition is of the nature of an election official. The elector directs, by signing the petition, that the proposed Act shall be submitted to the people, and he must sign his own name, as held in *Hargis* v. *Hall,* 196 Ark. 878, 120 S. W. 2d 335, and he must do so in the presence of the circulator of the petition, in order that the circulator may truthfully make the affidavit required by both the Constitution and the statute. In many instances no one is present except the circulator of the petition and the

signer, and when the circulator makes the required affidavit, the *prima facie* showing has been made that the elector signed the petition.''

' It is true that the presumption of verity that attaches upon the making of the affidavit by the circulator of a petition is not a conclusive one, but it is sufficient to make a *prima facie* case in favor of the petitioners and places the burden of showing invalidity upon those who challenge the petition. The 35 sections of the petition of appellees show on their face to have been duly circulated, signed and verified. Appellants have not attacked the verity of the affidavits attached to the petition. There was no showing of fraudulent conduct on the part of the circulators of the petition. We hold that the verification of the petition by the canvassers was sufficient to make a *prima facie* case and shift to appellants the burden of going forward with the evidence. The trial court correctly so held.

Appellants' second contention for reversal is: ''Because the court erred in holding that the sole question for determination . . . is whether or not the petitions filed in this proceeding do or do not contain fifteen per cent. of those persons whose names appear upon the certified poll list filed by the Collector in the Clerk's office, and it is not proper . . . to inquire into the qualifications of any of those persons to determine whether or not they are, or are not *qualified electors*. . . .'' We find it unnecessary to determine whether the circuit judge misconstrued the effect of the decision in *Samuels, et al., v. Robins, et al.,* 209 Ark. 614, 192 S. W. 2d 109, in making the above ruling for the reason that, if this contention of appellants were upheld, the petition filed in the instant case would, nevertheless, be sufficient. This is true because appellants simply have not challenged sufficient names to destroy the sufficiency of the petition even if all their challenges were sustained. *Tollett* v. *Knod,* 210 Ark. 781, 197 S. W. 2d 744.

The parties stipulated that 2,638 names appeared on the certified poll tax list of Lincoln county for 1944. At appellants' request the trial court ruled that this list

represented the criterion for determining whether 15 per cent. of the qualified electors signed the petition. Fifteen per cent. of 2,638 would be 396 names, the number required to call an election. The report of the checkers listed as questionable 283 names and appellants challenged 273 of this number. The petition contained 717 signatures. If all the names challenged by appellants had been stricken there would still remain 444 names which is more than the 396 required. Appellants made no showing, or offer to show, that names other than the 273 challenged by them were ineligible. It was certainly incumbent on them to, at least, offer to show the invalidity of a sufficient number of signatures to destroy the sufficiency of the petition, before they can claim to have been prejudiced by the court's ruling.

We find no prejudicial error in the record, and the judgment is affirmed.