SAVE ENERGY REAP TAXES *v.* Yota SHAW
and Morris Street

08-1184 288 S.W.3d 601

Supreme Court of Arkansas
Opinion delivered October 16, 2008

430

*Jeremy B. Lowrey*, for appellant.

*Blair & Stroud*, by: *H. David Blair*; and *James A. McLarty, III*, for appellee Yota Shaw.

*Osmon & Ethredge, P.A.*, by: *Johnnie A. Copeland* and *David L. Ethredge*, for appellee Morris Street.

R OBERT L. BROWN, Justice. Save Energy Reap Taxes ("SERT") is a nonprofit Arkansas corporation that was created to promote the ballot initiative in Sharp County to permit the sale of alcohol. On August 6, 2008, SERT submitted a number of initiative petitions, containing 5,017 signatures, to then-Sharp County Clerk Joe Estes. Of those signatures, 4,620 were certified by the county clerk, leaving 251 more than the 4,369 signatures required by statute for the issue to be placed on the November ballot.[1]

---

[1] A petition must be signed by thirty-eight percent of the qualified electors in any given county in order to certify a "wet/dry" election. Ark. Code Ann. § 3-8-205 (Repl. 2008). The county clerk in Sharp County determined that there were 11,496 legal registered

Following certification, appellees Yota Shaw and Morris Street filed separate complaints in which each challenged the validity of the certification and sought injunctive relief. The circuit judge joined the two cases for trial, granted the appellees' request for a temporary injunction, and held a hearing on the matter beginning September 22, 2008.

On October 3, 2008, the circuit judge entered a final order, which incorporated by reference findings of fact, conclusions, and orders set out in a document dated September 25, 2008. The final order set aside the county clerk's certification of the local-option question and instructed the election commission to remove it from the November ballot and not to count the votes.

The circuit judge specifically found in his order that 461 of the signatures certified by the county clerk were invalid and could not be counted toward the 4,369 needed to place the issue on the ballot. In doing so, the judge considered the testimony of Dawn Reed, a forensic document examiner, as well as his own review of questionable initiative petitions and signatures and the admission of canvasser Ruth Reynolds. He also heard testimony from several individuals whose purported signatures were questioned. After considering the evidence, the judge ruled that signatures with common authorship appeared on twenty-three initiative petition pages. Because a canvasser had attached what the circuit judge determined was a false affidavit to those pages, purporting to verify that "the foregoing persons signed this sheet . . . and each of them signed his or her name thereto in my presence," he invalidated all of the signatures on those pages — a total of 238 signatures. The judge also invalidated the signature of Charlotte Hall because, based on her testimony, he found that Ms. Hall's husband had signed her name to the initiative petition.

The judge, in addition, invalidated 222 signatures because he determined that the verification of those initiative petition pages by affidavit was invalid. To meet the verification requirement, a canvasser, Ruth Reynolds, had presented various petitions to be notarized by Linda Thompson. Reynolds and Thompson both testified that Reynolds had signed about eighty-five percent of the initiative petitions before she presented the documents to Thompson for notarization. The circuit judge found that this

voters in that county as of June 1, 2008. Therefore, 4,369 were required for SERT to successfully put the issue on the ballot for the November 4, 2008 general election.

violated the statutory requirements for witnessing and attesting to the veracity of local-option petitions. As a result, he invalidated eighty-five percent of the petitions gathered by Reynolds and notarized by Thompson.

SERT has now appealed the circuit judge's order. Appellees Shaw and Street have cross-appealed on grounds that the initiative petitions proposed a county ordinance that was legally incorrect and further that the petitions did not follow the form set out by statute.

## I. Verification

SERT contends as its first point that the circuit judge erred by invalidating eighty-five percent of the petitions circulated by Ruth Reynolds and notarized by Linda Thompson. SERT initially advances the argument that the notarization was not invalid under applicable statutes and, in the alternative, argues that Ruth Reynolds's subsequent testimony cured any defect in the verification.

We begin by noting that under section 7-9-104 of the Arkansas Code governing initiatives, a signature on an initiative petition must be personally signed to be valid. Ark. Code Ann. § 7-9-104(a) (Repl. 2007). The Code further requires that the person who circulates the petition must verify the genuineness of the signatures by affidavit. Id. § 7-9-109. In doing so, the canvasser must swear that each person signed his or her name to the initiative petition in the presence of the canvasser. Id. Section 3-8-204(c) of the Local Option Code makes the section 7-9-109 requirements specifically applicable to local-option petitions. Id. § 3-8-204(c) (Repl. 2008).

The Arkansas Code governing notaries public sets forth the general requirements for witnessing a signature by a notary public:

> (a) It is unlawful for any notary public to witness any signature on any instrument unless the notary public either:
>
> (1) Witnesses the signing of the instrument and personally knows the signer or is presented proof of the identity of the signer; or
>
> (2) Recognizes the signature of the signer by virtue of familiarity with the signature.
>
> (b) Any notary public violating this section shall be guilty of a Class A misdemeanor.

(c) For purposes of this section, "personally knows" means having an acquaintance, derived from association with the individual, which establishes the individual's identity with at least a reasonable certainty.

Ark. Code Ann. § 21-14-111 (Repl. 2004).

It is instructive, however, that the Local Option Code imposes stricter requirements before a notary public can verify a canvasser's affidavit:

(f) A person shall be guilty of a Class A misdemeanor if that person:

. . . .

(6) Acting in the capacity of a notary knowingly fails to witness a canvasser's affidavit either by witnessing the signing of the instrument and personally knowing the signer or being presented with proof of identity of the signer.

Ark. Code Ann. § 3-8-204(f)(6) (Repl. 2008).

There is no question in this court's mind that section 3-8-204(f)(6) governs this case because it is specifically directed to local-option petitions. *See Ozark Gas Pipeline Corp. v. Ark. Pub. Serv. Comm'n*, 342 Ark. 591, 29 S.W.3d 730, 736 (2000) (a general statute must yield when there is a specific statute involving the particular matter).

We turn then to the merits of this issue. An affidavit by the canvasser attesting to the validity of garnered signatures is required under section 3-8-204(c) for local-option petitions. An affidavit is generally defined as a written statement affirmed or sworn to by some person legally authorized to administer an oath or affirmation. *See, e.g., Kirk v. Hartlieb*, 193 Ark. 37, 39, 97 S.W.2d 434, 435 (1936). The process requires concurrent action on the part of the affiant and the authorized officer. *Id.* at 40, 97 S.W.2d at 436.

■ The circuit judge recognized in this case that the requirements of section 3-8-204(f)(6) are mandatory and require strict compliance. We agree. *See Doty v. Bettis*, 329 Ark. 120, 123, 947 S.W.2d 743, 744 (1997) (stating that prior to an election, the provisions of the laws are mandatory, and we will strike an initiative if it does not strictly adhere to the statutory require-

ments). Moreover, in the context of an election petition where an affidavit by the canvasser attesting to the validity of the signatures on the initiative petitions is required by sections 3-8-204(c) and 7-9-109, the notary's verification takes on additional significance. Without a perfected affidavit by the canvasser swearing to the validity of the signatures in the initiative petition, the entire petition becomes suspect and the entire canvassing effort is called into question. It is essential that the attestation and the witnessing required by statute be strictly followed so that our citizenry can have faith and confidence in the election process, and the General Assembly has so mandated. By their own admission, Ruth Reynolds and Linda Thompson did not follow the required procedures, and we hold that this renders eighty-five percent of the petitions signed by Ruth Reynolds and notarized by Linda Thompson a nullity.

Nor do we agree with SERT that Reynolds cured the notarization defect by testimony under oath that all signatures on her initiative petitions were valid. On the contrary, Reynolds admitted that in a number of instances, someone else signed the name of the person on the petition. We affirm the circuit judge on this point.

## II. Common Authorship

SERT's second point on appeal is that the circuit judge erred by invalidating 238 signatures on grounds that there was evidence of common authorship. SERT initially claims that the judge did not apply the recognized standard of proof. SERT also urges this court to find that the evidence was insufficient to support a finding of common authorship. SERT finally contends that the trial judge erred by invalidating the petitions in their entirety because the appellees did not present evidence that the canvassers consciously submitted false affidavits.

SERT directs this court to *Roberts v. Priest* for the proposition that a "high degree of certainty" is required to invalidate a signature on an initiative petition. 334 Ark. 503, 513, 975 S.W.2d 850, 854 (1998). It points to Dawn Reed's expert testimony that it was "more probably true than not" that the signatures had common authorship. Accordingly, SERT argues that the evidence did not meet the required standard of proof. In the alternative, SERT maintains that there was insufficient evidence to support a finding of common authorship under any standard of review.

SERT alleges that Ms. Reed's testimony was the only evidence of common authorship and that it was too speculative to support the circuit judge's findings.

This court gives great deference to a circuit judge's findings of fact. *See, e.g., Graham Constr. Co. v. Earl*, 362 Ark. 220, 225, 208 S.W.3d 106, 109 (2005). One reason is that this court is mindful that the circuit judge is in the best position to hear testimony and determine the credibility of the witnesses. *Id.* This court will reverse a finding of fact by a circuit judge only if it is clearly against the preponderance of the evidence. *Id.*; *see also* Ark. R. Civ. P. 52(a) (2008).[2]

■ In the case before us, the circuit judge expressly relied on testimony of an expert witness. Moreover, Ruth Reynolds admitted that in a number of instances someone else had signed the name of the person whose signature appeared on the petition. The judge's order also indicates that he relied on the testimony of witnesses whose signatures were purportedly invalid, as well as his own review of the petitions. Based on his assessment of this evidence, he concluded that there were instances of common authorship on twenty-three petition pages. This finding was not clearly against the preponderance of the evidence, and there was substantial evidence to support his finding.

SERT also claims that the trial court erred by invalidating all of the signatures on those twenty-three petitions. Instead, it asserts that evidence of common authorship operates to invalidate the entire petition only where there is evidence that the canvasser acted consciously and for an improper purpose. In advancing this proposition, appellant relies on a case involving a state initiative in which this court held that "one who attacks a petition cannot destroy the verity of the circulator's affidavit merely by proving that at least one signature is not genuine. The plaintiff must also adduce proof to show that the falsity of the canvasser's affidavit was conscious rather than inadvertent." *Pafford v. Hall*, 217 Ark. 734, 737, 233 S.W.2d 72, 74 (1950). SERT argues that under the *Pafford* standard, the circuit judge was only permitted to nullify the signatures he found to be invalid, not the entire petitions.

---

[2] SERT contends this court's standard of review is de novo because the issues are solely issues of law. We disagree with regard to the circuit judge's findings of fact, which were integral to his decision.

 SERT's contentions must fail because the legislature has spoken on this point with respect to county initiative petitions. *See* Act of Mar. 24, 1977, No. 742, 1977 Ark. Acts 1736, now codified at Ark. Code Ann. § 14-14-915(d) (Repl. 1998). Section 14-14-915(d) reads:

> (d) SUFFICIENCY OF PETITION. Within ten (10) days after the filing of any petition, the county clerk shall examine and ascertain its sufficiency. Where the petition contains evidence of forgery, perpetrated either by the circulator or with his connivance, or evidence that a person has signed a name other than his own to the petition, the prima facie verity of the circulator's affidavit shall be nullified and disregarded, and the burden of proof shall be upon the sponsors of petitions to establish the genuineness of each signature. If the petition is found sufficient, the clerk shall immediately certify such finding to the county board of election commissioners and the quorum court.

*See also Parks v. Taylor*, 283 Ark. 486, 491, 678 S.W.2d 766, 768 (1984) (when a circulator for a county initiative makes an affidavit that signatures are genuine when they are not, he has made a false affidavit and the petition loses its presumption of validity). Section 14-14-915(d) does not include the "conscious falsity" element. We hold that section 14-14-915(d) controls this issue for this county initiative.

 In the instant case, there was sufficient evidence on which the circuit judge could rely to find that certain people signed names other than their own on various initiative petitions submitted to the county clerk by SERT. As such, the circuit judge was well within his bounds to reject the validity of those petitions and invalidate all of the signatures in the absence of proof from SERT that each signature was, in fact, valid. Accordingly, the burden of proving the genuineness of the disputed signatures shifted to SERT. Neither Ruth Reynolds, nor any other canvasser, however, testified that the individual signatures on the initiative petitions, other than those with common authorship, were valid or genuine. SERT's burden of proof was not met. We hold that the circuit judge did not clearly err on this issue.

 To summarize, we hold that the circuit judge was not clearly erroneous in finding a total of 461 signatures on the initiative petitions to be invalid. The result of this finding is that the required number of valid signatures was not collected to place

the question on the ballot. Accordingly, we affirm the order of the circuit judge setting aside the certification of the question regarding the sale of alcoholic beverages in Sharp County for placement on the ballot for the November 4, 2008 general election. We further affirm the order of the circuit judge removing this question from the ballot and directing that no votes cast on this question be counted.

Because of this court's affirmance on direct appeal, it is unnecessary to address appellees' issues on cross-appeal. A request for oral argument was included in SERT's initial brief but was not filed separately in letter form as required by our Rules of the Supreme Court. Ark. Sup. Ct. R. 5-1(a) (2008). Hence, we do not consider it.

The mandate will issue on October 22, 2008, unless a petition for rehearing is filed. Any petition for rehearing must be filed by October 20, 2008, and any response by October 21, 2008.

Affirmed.