

# SUPREME COURT OF ARKANSAS

No. CV–14–827

| | |
|---|---|
| OUR COMMUNITY, OUR DOLLARS<br>APPELLANT/CROSS-APPELLEE<br><br>V.<br><br><br>DAVID BULLOCK, TIFFANY<br>FRANCIS, AND BRYAN KEATON<br>APPELLEES/CROSS-APPELLANTS | Opinion Delivered October 31, 2014<br><br>APPEAL FROM THE SALINE<br>COUNTY CIRCUIT COURT<br>[NO. 63-CV-14-471]<br><br>HONORABLE GRISHAM PHILLIPS,<br>JUDGE<br><br><u>REVERSED AND REMANDED ON<br>DIRECT APPEAL; AFFIRMED ON<br>CROSS-APPEAL</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Our Community, Our Dollars (Our Community) appeals the decision of the Saline County Circuit Court finding that the local-option petition certified by the Saline County Clerk did not achieve the number of signatures required for the proposal to be placed on the ballot in the upcoming general election on November 4, 2014. For reversal, Our Community first contends that the circuit court did not acquire jurisdiction to review the county clerk's certification because the complaint filed by appellees David Bullock, Tiffany Francis, and Bryan Keaton, failed to state a cause of action and because appellees did not plead with particularity their claim of fraud. In connection with this argument, it also argues that the complaint was deficient because appellees failed to attach the local-option petition, or any relevant parts thereof, to the complaint as required by Rule 10(d) of the Arkansas Rules of Civil Procedure. As its second point on appeal, Our Community asserts that the circuit court

SLIP OPINION

erred by not considering in its review a number of signatures that the county clerk failed to count prior to certifying the local-option petition. Our Community also argues that the circuit court erred in concluding that Arkansas Code Annotated section 14-14-915(d) (Repl. 2013) applies to the circuit court's review of the county clerk's certification. Alternatively, Our Community contends that, if this statute is applicable, it is unconstitutional.

Appellees have also filed a cross-appeal. In it, they assert that the local-option petition is invalid because it does not contain an enacting clause and that the circuit court erred in finding substantial compliance with the enacting-clause requirement. Finally, they argue that the circuit court committed error by counting signatures that were solicited between the time Our Community filed the petition with the county clerk on July 7, 2014, and the date that the clerk issued the initial notice on July 18, 2014, informing Our Community that the petition was deficient.

Our jurisdiction over this matter falls under Arkansas Supreme Court Rule 1-2(a)(8), as an appeal required by law to be heard by this court. *See* Ark. Code Ann. § 3-8-205(e)(1)(B) (Supp. 2013). We find merit in the second point on direct appeal; thus, we reverse and remand on that issue. We affirm on cross-appeal.

Our review of the record discloses that Our Community is a ballot-question committee that is the sponsor of the local-option petition in question consisting of a proposal to allow voters in Saline County to decide whether to permit the manufacture and sale of alcoholic beverages in the county. In order for such a proposal to be placed on the ballot, Arkansas Code Annotated section 3-8-205(a) requires a local-option petition to be supported

by the signatures of thirty-eight percent of the registered voters in the county. The parties agree that 25,580 signatures is the threshold number in this instance. Our Community filed the local-option petition with the county clerk on July 7, 2014. On July 18, 2014, the clerk notified Our Community that the proposal did not meet the signature requirements of section 3-8-205(a). Pursuant to section 14-14-915(c), the clerk granted Our Community an additional ten days to augment the petition with additional signatures or to contest the clerk's exclusion of signatures that were submitted with the petition. On July 28, 2014, Our Community filed additional petition parts and signatures with the county clerk, who on July 31, 2014, certified that the proposal attained thirty-eight percent of the registered voters' signatures.

Thereafter, on August 8, 2014, appellees Bullock, Francis, and Keaton, who are registered voters in Saline County, filed suit against the county clerk challenging his certification that the petition gained the support of thirty-eight percent of registered voters. In response, the county clerk promptly filed a motion to dismiss, arguing that the complaint filed by appellees did not state a valid cause of action and that the local-option petition was not attached to the complaint as required by Arkansas Rule of Civil Procedure 10(d).

On August 14, 2014, Our Community, as the sponsor of the proposal, moved to intervene in the action, and the circuit court entered an order that same day granting the motion. Our Community also filed an answer to the complaint that included a counterclaim and a cross-claim against the county clerk, seeking a declaration that a number of relevant

3

statutory provisions are unconstitutional.[1]  Also on August 14, 2014, Our Community filed a motion to dismiss appellees' complaint based on the identical grounds urged by the county clerk.[2]

Later in the day on August 14, 2014, appellees filed an amended complaint.  Still later that same afternoon, appellees filed a second amended complaint.  Subsequently, on August 18, 2014, appellees responded to Our Community's motion to dismiss, denying that their complaint was deficient and asserting that, in any event, they had properly amended their complaint.  Also on August 18, 2014, the circuit court conducted a hearing and entered an order denying Our Community's motion to dismiss the complaint.

The circuit court held additional hearings on August 21, and 22, and September 5, 2014.  At the hearings, the testimony established that the county clerk's staff worked to verify the petitions and to determine whether the petitions had been signed by 25,580 registered voters.  In that effort, the clerk hired additional personnel at the county's expense to assist in the verification process.  Ultimately, the county clerk verified 25,653 signatures, which was 73 signatures in excess of the required number.  However, the testimony also revealed that the clerk stopped counting signatures at that point and that he failed to screen all of the signatures that were submitted with the petition.  Specifically, the county clerk did not review a total of 960 signatures.  At the behest of the circuit court, the clerk examined the remaining

---

[1]As required by Arkansas Code Annotated section 16-111-106 (Repl. 2006), appellees notified the attorney general of these constitutional challenges.  The attorney general declined to participate.

[2]The county clerk subsequently withdrew its motion to dismiss.

signatures and determined that 720 of the 960 uncounted signatures were registered voters in the county. However, the circuit court ruled, based on section 14-14-915(e), that it was not proper for the court to consider the remaining 720 signatures in its review of the certification because the county clerk did not have "jurisdiction" to count or verify signatures after the clerk had issued the certification.

Based on the testimony and evidence presented at the hearings, the circuit court entered an order on September 10, 2014, rescinding the county clerk's certification of the local-option petition. In its review, the court invalidated a total of 156 signatures, which left the petition 83 signatures short of the required number. In its order, the circuit court also addressed several matters raised by the parties. The court rejected appellees' claims that the petition was invalid because it did not include an enacting clause and that the county clerk should not have counted the signatures collected between July 8 and July 17, 2014. The court also ruled against Our Community's challenge to the constitutionality of the contested statutes. Based on its finding that the petition failed to attain the requisite number of signatures, the circuit court issued an injunction for the removal of the proposal from the ballot; however, the court stayed that directive, pending this appeal, which timely followed the entry of the circuit court's order. Pursuant to section 3-8-205(e)(1)(B), we have expedited the appeal on our docket.

As part of its first issue, Our Community contends that the original complaint filed by appellees failed to state a cause of action for a signature challenge to the county clerk's certification and that it also failed to allege sufficient facts to support a claim of fraud. Our

Community maintains that the initial complaint filed by appellees was deficient because it failed to plead facts identifying any specific signature alleged to be invalid; because the complaint failed to set forth particular facts showing the total number of challenged signatures; because it did not identify the specific basis for challenging any one signature; and because the complaint did not allege how invalidating any particular signatures would render the certification erroneous. Further, Our Community contends that the amended complaints filed by appellees could not cure the deficiencies found in the original complaint because the amendments were filed after the statutory deadline had expired for challenging the county clerk's certification. In making this argument, Our Community relies exclusively on law that is pertinent to causes of actions involving election contests. *See, e.g.*, *Willis v. Crumbly*, 371 Ark. 517, 268 S.W.3d 288 (2007); *Tate-Smith v. Cupples*, 355 Ark. 230, 134 S.W.3d 535 (2003); *McCastlain v. Elmore*, 340 Ark. 365, 10 S.W.3d 835 (2000). In response, appellees maintain that Our Community's assertions are based on the flawed premise that election-contest law applies to a challenge of a county clerk's certification of a local-option petition. In this regard, they insist that the public-policy concerns at issue in election contests are not implicated in challenges to a certification of a local-option petition. *See King v. Whitfield*, 339 Ark. 176, 182, 3 S.W.3d 21, 24 (1999) (Glaze, J., concurring) (explaining that "election contest procedures are uniquely designed to dispose of all questions or issues quickly so stability and finality can be reached, thus, permitting government to continue as it should"). Appellees also assert that, even if election-contest law applies, they alleged sufficient facts in their original complaint to state a cause of action and that, in any event, they amended their

6

complaint in a timely fashion and that the amendments remedied any deficiencies lacking in the initial complaint.

Also under this point, Our Community contends that the original complaint was flawed because appellees neglected to append the petition or any of its contested parts to the complaint as required by Rule 10(d) of the Arkansas Rules of Civil Procedure. In opposing this argument, appellees assert that it complied with the rule because it attached the county clerk's certification as an exhibit to the complaint. Further, they argue that their amended complaints included the challenged petition parts, thereby rectifying any defects in the initial complaint.

The instant case marks the first occasion that this court has been asked to apply the law governing election contests and its requirements for stating a cause of action to a case involving a challenge to a county clerk's certification of a local–option petition. The question whether Rule 10(d) applies in such a case is also a matter of first impression. Although these are threshold issues, neither of them compromises the jurisdiction of the circuit court to review the clerk's certification. *Cf. Willis v. King*, 352 Ark. 55, 98 S.W.3d 427 (2003) (recognizing that the filing deadlines set by statute are mandatory and jurisdictional). As a consequence, we deem it unnecessary to address these issues in light of our decision to reverse and remand on the next point. Any opinion we could offer on these matters would be purely advisory, and it is well settled that this court does not issue advisory opinions. *See Goodloe v. Goodloe*, 2014 Ark. 300, 439 S.W.3d 5.

In its second issue, Our Community claims error in the circuit court's refusal to

SLIP OPINION

consider the testimony of a deputy clerk that the local-option petition contained an additional 720 signatures of registered voters that the county clerk had declined to review. Because the circuit court found that the petition failed by 83 signatures, Our Community contends that, had the circuit court considered the 720 signatures, the number of signatures would exceed that required for certification.

In ruling that it was prohibited from considering these signatures, the circuit court based its decision on an interpretation of section 14–14–915(e). We review issues of statutory interpretation de novo because it is for this court to decide what a statute means. *Berryhill v. Synatzske*, 2014 Ark. 169, 432 S.W.3d 637. However, this court will accept a circuit court's interpretation of the law unless it is shown that the court's interpretation was in error. *Holbrook v. Healthport, Inc.*, 2014 Ark. 146, 432 S.W.3d 593. The basic rule of statutory construction is to give effect to the intent of the legislature. *Valley v. Pulaski Cnty. Circuit Court*, 2014 Ark. 112, 431 S.W.3d 916. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Bell v. McDonald*, 2014 Ark. 75, 432 S.W.3d 18.

Section 14–14–915(e) provides as follows:

> Insufficiency of Petition and Recertification. If the county clerk finds the petition insufficient, within ten (10) days after the filing thereof the clerk shall notify the petitioners or their designated agent or attorney of record, in writing, setting forth in detail every reason for the findings of insufficiency. Upon notification of insufficiency of the petition, the petitioners shall be afforded ten (10) calendar days, exclusive of the day notice of insufficiency is receipted, in which to solicit and add additional signatures, or to submit proof tending to show that signatures rejected by the county clerk are correct and should be counted. *Upon resubmission of a petition which was previously declared insufficient, within five (5) calendar days the county clerk shall recertify its sufficiency or insufficiency*

SLIP OPINION

*in the same manner as prescribed in this section and, thereupon, the clerk's jurisdiction as to the sufficiency of the petition shall cease.*

Ark. Code Ann. § 14-14-915(e) (Repl. 2013) (emphasis supplied). In not considering the 720 signatures, the circuit court reasoned that the county clerk could not presently review the uncounted signatures because the clerk's jurisdiction had ended.

We disagree with the circuit court's ruling. With regard to a county clerk's certification, section 3-8-205 provides that, "[i]f it is found that thirty-eight percent (38%) of the qualified electors have signed the petition, the county clerk shall certify *that finding* to the county board of election commissioners[.]" Ark. Code Ann. § 3-8-205(b) (Supp. 2013) (emphasis supplied). Thus, a county clerk is to certify the "finding" that thirty-eight percent of the registered voters in the county signed the petition, and it is this finding that a circuit court is to review. Section 14-14-915(e) does not purport to preclude a circuit court from considering in its review the entirety of the petition, which includes all of the signatures that were submitted to a county clerk with the petition. The statute merely sets a deadline of five days for the county clerk to complete the task of determining whether thirty-eight percent of the registered voters signed the petition, after the sponsors have been given ten days to cure the previous deficiencies. Although the statute couches the deadline in jurisdictional terms, it does not follow that a circuit court is prohibited from considering uncounted signatures when determining the correctness of a clerk's certification that thirty-eight percent of the registered voters signed the petition. Significantly, a circuit court's review of the certification is de novo. *Gocio v. Harkey*, 211 Ark. 410, 200 S.W.2d 977 (1947); *Nowlin v. Kreis*, 213 Ark. 781, 197 S.W.2d 89 (1999); *Ferguson v. Leach*, 210 Ark. 1032, 199 S.W.2d 305 (1947); *Tollett*

9

*v. Knod*, 210 Ark. 781, 197 S.W.2d 744 (1946). Although a county clerk is required to meet the deadline, the clerk's loss of jurisdiction after five days does not limit the evidence that can be received in circuit court upon its de novo review of the certification. On review, a circuit court is called upon to determine whether the petition was sufficient, meaning whether thirty-eight percent of the registered voters signed the petition. And, in that review, a circuit court must consider the entire petition. To hold otherwise would silence the voices of registered voters who properly affix their names to a petition but whose signatures are deemed unnecessary to count by a county clerk. This we will not allow. For these reasons, we hold that the circuit court clearly erred by refusing to consider the 720 signatures in its review of the clerk's certification.[3] Therefore, we reverse and remand on this point.[4]

_____

[3]Unlike the dissent, we decline to consider the issue moot. This case presents a pre-election challenge to a proposal that is currently on the ballot, and election day has not passed. The parties have brought this case to us in all due haste as required under the statutory scheme. Although there are time constraints associated with remanding this case so near election day, such is the nature of pre-election contests, which are expedited for that very reason. We choose not to shirk our duty to review the circuit court's decision and to reverse in the face of clear error, which is the root cause of the present timing difficulties. To hold otherwise would in all practicality insulate such decisions from review. This, too, we will not permit.

[4]Appellees suggest that Our Community should have sought a writ of mandamus to compel the county clerk to verify all of the signatures that accompanied the petition. However, mandamus is an appropriate remedy only when a public officer is called upon to do a plain and specific duty, which is required by law and which requires no exercise of discretion. *Clowers v. Lassiter*, 363 Ark. 241, 213 S.W.3d 6 (2005). As stated above, a county clerk's duty is to determine only whether thirty-eight percent of the registered voters of the county signed the petition. Section 3-8-205 does not provide direction as to how this task is to be accomplished. Therefore, it would appear that a clerk possesses some measure of discretion in carrying out this task. Moreover, appellees' contention is at odds with their assertion that the clerk lost jurisdiction to further verify signatures. They fail to explain how mandamus would lie against the clerk after the jurisdictional deadline has expired. In short,

As its next issue on appeal, Our Community asserts that the circuit court erred in applying a portion of 14-14-915(d) to exclude all of the signatures found on a petition part that contains an invalid signature. It contends that this provision applies only to a county clerk's screening of a petition and that it is not applicable to a circuit court's review of a certification. Based on this contention, Our Community argues that the circuit court erred by excluding a total of 92 signatures. We consider it necessary to address this argument, given our decision to reverse and remand on the previous point.

At issue here is the second sentence of section 14-14-915(d), which provides

> Where the petition contains evidence of forgery, perpetuated either by the circulator or with his or her connivance, or evidence that a person has signed a name other than his or her own to the petition, the prima facie verity of the circulator's affidavit shall be nullified and disregarded, and the burden of proof shall be upon the sponsors of petitions to establish the genuineness of each signature.

As stated, Our Community contends that this provision applies only to the county clerk's ministerial duties in vetting the petition, but not the circuit court's review of the clerk's certification. Upon our de novo review of this issue of statutory interpretation, we are not persuaded by this argument.

The Arkansas Constitution places the burden of proof upon the person or persons attacking the validity of the petition. Ark. Const. art. 5, § 1 [as amended by amendment 7]. Under the subheading on verification of petitions, amendment 7 provides,

> Only legal voters shall be counted upon petitions. Petitions may be circulated and presented in parts, but each part of any petition shall have

---

appellees cannot have it both ways.

11

SLIP OPINION

attached thereto the affidavit of the person circulating the same, that all signatures thereon were made in the presence of the affiant, and that to the best of the affiant's knowledge and belief each signature is genuine, and that the person signing is a legal voter and no other affidavit or verification shall be required to establish the genuineness of such signatures.

This provision, as to the effect to be given the affidavit of the circulator, has long been interpreted to mean that the circulator's affidavit is given prima facie verity. *Parks v. Taylor*, 283 Ark. 486, 678 S.W.2d 766 (1984) (citing *Sturdy v. Hall*, 201 Ark. 38, 143 S.W.2d 547 (1940)). But this presumption is not conclusive. *Id.* If it is shown that the affidavit attached to a particular petition is false, that petition loses the presumption of verity. *Id.* The burden will then shift to the proponent of the petition to establish the genuineness of each signature. *Id.*

In *Save Energy Reap Taxes v. Shaw*, 374 Ark. 428, 288 S.W.3d 601 (2008), this court specifically held that the second sentence of section 14-14-915(d) applies to local-option petitions. There, the circuit court found that a number of the signatures certified by the county clerk were invalid and could not be counted toward the number needed to place the issue on the ballot. In doing so, the circuit court considered the testimony of a forensic document examiner, as well as its own review of questionable initiative petitions and signatures, and the admission of a canvasser. The circuit court also heard testimony from several individuals whose purported signatures were questioned. After considering the evidence, the court ruled that signatures with common authorship appeared on twenty-three petition pages. Because a canvasser had attached what the circuit court determined was a false affidavit to those pages, the circuit court invalidated all of the signatures on those pages—a

12

total of 238 signatures.

On appeal in *Save Energy*, the appellant argued that the circuit court erred by invalidating the petitions in their entirety because the appellees did not present evidence that the canvassers consciously submitted false affidavits. Based on the second sentence of section 14-14-915(d), we rejected that argument, saying

> In the instant case, there was sufficient evidence on which the circuit judge could rely to find that certain people signed names other than their own on various initiative petitions submitted to the county clerk by SERT. As such, the circuit judge was well within his bounds to reject the validity of those petitions and invalidate all of the signatures in the absence of proof from SERT that each signature was, in fact, valid. Accordingly, the burden of proving the genuineness of the disputed signatures shifted to SERT. Neither Ruth Reynolds, nor any other canvasser, however, testified that the individual signatures on the initiative petitions, other than those with common authorship, were valid or genuine. SERT's burden of proof was not met. We hold that the circuit judge did not clearly err on this issue.

*Save Energy*, 374 Ark. at 437, 288 S.W.3d at 605–06.

Also, in *Mays v. Cole*, 374 Ark. 532, 289 S.W.3d 1 (2008), we reiterated that section 14-14-915(d) is controlling in county initiative proceedings. We said,

> Appellants submitted affidavits by two people, whose alleged signatures appear on a petition, in which they state under oath that they did not sign the petition. The circuit court's order acknowledges that Appellants produced evidence of two allegedly forged signatures. Therefore, they have satisfied their burden of proof under section 14-14-915(d), and the burden of proof shifted to Appellees to prove the genuineness of the signatures on the petition. In view of the fact that Appellees failed to produce any evidence on this issue, all the signatures on the petition that contain the alleged forgeries must be decertified. According to the record, fourteen of the signatures on that petition, including the two allegedly forged signatures, were counted for the purpose of certification. We, therefore, direct that all fourteen signatures be decertified.

*Mays*, 374 Ark. at 452, 289 S.W.3d at 7.

13

As can be seen, this court has consistently applied section 14-14-915(d) in legal proceedings, and in particular to local-option matters. We perceive nothing in the language of the statute that limits its application to the county clerk's verification process. Consequently, this argument is without merit. Our Community presented no evidence verifying the excluded signatures. Therefore, the circuit court correctly excluded all of the signatures found on petitions where any one signature was found to be invalid.

As an alternative argument, Our Community contends that, if the statute applies, it is unconstitutional because it conflicts with amendment 7. It argues that the statute places the burden of proof on the sponsor, whereas amendment 7 places the burden of proof on the person attacking the validity of the petition. This argument is also without merit.

In considering the decision of the circuit court, every statute is presumed constitutional. *Reed v. Arvis Harper Bail Bonds, Inc.*, 2010 Ark. 338, 368 S.W.3d 69. If it is possible to construe a statute as constitutional, we must do so. *In re Guardianship of S.H.*, 2012 Ark. 245, 409 S.W.3d 307. Because statutes are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable. *Id.* Any doubt is resolved in favor of constitutionality. *Cato v. Craighead Cnty. Circuit Court*, 2009 Ark. 334, 322 S.W.3d 484.

Amendment 7 provides that "[i]n the event of legal proceedings to prevent giving legal effect to any petition upon any grounds, the burden of proof shall be upon the person or persons attacking the validity of the petition." The amendment also states that the General Assembly may enact laws "to facilitate its operation." To reiterate, section 14-14-915(d)

states,

> Where the petition contains evidence of forgery, perpetuated either by the circulator or with his or her connivance, or evidence that a person has signed a name other than his or her own to the petition, the prima facie verity of the circulator's affidavit shall be nullified and disregarded, and the burden of proof shall be upon the sponsors of petitions to establish the genuineness of each signature.

In our view, section 14-14-915(d) does not conflict with amendment 7. Under the statute, the person attacking the petition must first meet the burden of proving that the petition contains evidence of forgery or that there is evidence that a person has signed a name other than his own. *See Mays, supra.* This is entirely consistent with the constitution, which places the burden of proof on the challenger. However, once the contestant meets this burden, the burden shifts to the sponsor to establish the genuineness of each signature that the challenger has shown to be false. Because the burden of proof is on the contestant in the first instance, the statute does not conflict with the constitution.

We now turn to the issues raised by appellees on cross-appeal. As their first point, appellees contend that the petition should not have been certified because the proposal did not contain an enacting clause as required by the constitution and Arkansas Code Annotated section 7-9-104(a) (Supp. 2013). They argue that this is so, particularly under the circumstances of this case, where the petition referred to the proposal as an "ordinance."

Amendment 7 states that "[t]he style of all bills initiated and submitted under the provisions of this section shall be, 'Be it Enacted by the People of the State of Arkansas, (municipality or county, as the case may be).'" Section 3-8-205(f) provides that "except as provided in this section, a petition for local-option election shall be governed by section 7-9-

15

101 et seq." Section 7-9-104(a) proscribes that a petition for an "ordinance, act, or amendment proposed by initiative shall be on substantially the following form," and this form includes an enacting clause similar to the one provided in the constitution.

The petition in this case reads as follows:

INITIATIVE PETITION

To the Honorable Doug Curtis, County Clerk of Saline County, Arkansas

We, the undersigned registered voters of Saline County, Arkansas respectfully propose the following ordinance and by this, our petition, order that the same be submitted to the people of said county to the end that the same may be adopted, enacted or rejected by a vote of the registered voters of said county at the regular general election [to] be held on the 4th day of November, 2014 and each of us for himself or herself says:

I have personally signed this petition: I am a registered voter of Saline County, Arkansas, and my printed name, date of birth, residence, city or town of residence, and date of signing this petition are correctly written after my signature.

TO ALLOW THE SALE AND MANUFACTURE OF ALCOHOLIC BEVERAGES IN SALINE COUNTY, ARKANSAS. TO REPEAL THE ABOLITION OF THE SALE AND MANUFACTURE OF INTOXICATING LIQUORS WITHIN SALINE COUNTY, ARKANSAS AND TO ALLOW THE DIRECTOR OF THE ALCOHOL BEVERAGE CONTROL DIVISION OF THE STATE OF ARKANSAS TO GRANT LICENSES FOR THE SALE OR MANUFACTURE OF INTOXICATING LIQUORS TO INCLUDE ALCOHOLIC BEVERAGES OF ANY KIND AND TYPE, INCLUDING BUT NOT LIMITED TO BEER, VINOUS, SPIRITOUS, AND MALT LIQUOR WITHIN SALINE COUNTY, ARKANSAS PURSUANT TO APPLICABLE STATE LAW AND REGULATIONS RELATED TO ALCOHOLIC BEVERAGES.

Noticeably, the measure does not contain an enacting clause. The circuit court ruled that it was not necessary for the petition to contain an enacting clause because no statute or ordinance was being enacted as a result of the petition. The court also found that the petition substantially complied with section 7-9-104(a).

This court has consistently held that local-option elections are not initiated measures

SLIP OPINION

within the meaning of amendment 7 but are in the nature of a referendum measure. *Brown v. Davis*, 226 Ark. 843, 294 S.W.2d 481 (1956). In the case of *Yarbrough v. Beardon*, 206 Ark. 553, 177 S.W.2d 38 (1944), where we held that local-option laws did not conflict with the constitution, we explained,

> Amendment No. 7 to the constitution has no application. This is not an initiated act as provided for in that amendment. It is merely a submission to the legal voters of the county on the sale of liquor, and is more in the nature of a referendum than an initiative petition.

*Yarbrough*, 206 Ark. at 555, 177 S.W.2d at 39.

When local-option questions are placed on the ballot, the form in which the issue is presented to the voters is either "FOR the Manufacture or Sale of Intoxicating Liquors" or "AGAINST the Manufacture or Sale of Intoxicating Liquors." Ark. Code Ann. § 3-8-206(a)(1) (Repl. 2008). Depending on the result of the election, the Director of the Alcoholic Beverage Control Division may or may not issue licenses or permits for the manufacture or sale of intoxicating liquors within the designated territory affected by the election. Ark. Code Ann. § 3-8-208(a) & (b) (Repl. 2008).

As is evident, a local-option petition is not the sort of measure that requires the inclusion of an enacting clause. Such a proposal is demonstrably not an ordinance to which section 7-9-104(a) would strictly apply. As we have said, the pre-filing requirements for local-option measures are not governed by amendment 7. *Dean v. Williams*, 339 Ark. 439, 6 S.W.3d 89 (1999) (recognizing that it is only after such petitions are filed with the county clerk that subsequent proceedings are conducted in the manner provided for county initiative measures under Amendment 7 and its enabling acts). Therefore, the circuit court did not err

SLIP OPINION

in finding substantial compliance with the statute and by not decertifying the petition based on the absence of an enacting clause.

As their final point on cross-appeal, appellees argue that the circuit court should not have counted 2,074 signatures that were collected between July 7 (the date the petition was filed), and July 18 (the date the clerk notified Our Community that the petition was deficient). They contend that the plain language of section 14-14-915(e) allows additional signatures to be solicited and added only after the county clerk's notice of deficiency is given.

As relevant here, section 14-14-915(e) provides that "[u]pon notification of insufficiency of the petition, the petitioners shall be afforded ten (10) calendar days, exclusive of the day notice of insufficiency is receipted, in which to solicit and add additional signatures, or to submit proof tending to show that signatures rejected by the county clerk are correct and should be counted." Applying our familiar rules of statutory construction, we agree with appellees that this provision does envision the collection of signatures following the clerk's notification that the petition, as originally submitted, is insufficient. However, there is nothing in the statute that expressly prohibits a sponsor from collecting signatures after the petition has been filed with the county clerk. In construing statutes, this court will not add words to a statute to convey a meaning that is not there. *McMillan v. Live Nation Entm't, Inc.*, 2012 Ark. 166, 401 S.W.3d 473. Furthermore, we will not read into a statute a provision not put there by the General Assembly. *Neeve v. City of Caddo Valley*, 351 Ark. 235, 91 S.W.3d 71. Accordingly, we are not able to ascribe meaning to the statute to forbid the collection of signatures during this time period when such is not explicitly prohibited by the statute. We

18

affirm on this point.

In conclusion, the circuit court's order overturning the county clerk's certification is reversed, and this matter is remanded for the circuit court to perform its de novo review by determining the sufficiency of the petition, as consistent with this opinion. In its review, the circuit court is to consider the validity of the uncounted 720 signatures.[5]

Reversed and remanded on direct appeal; affirmed on cross-appeal.

Mandate to issue immediately.

HANNAH, C.J., and CORBIN and DANIELSON, JJ., dissent.

**DONALD L. CORBIN, Justice, dissenting.** Today's majority opinion represents another blatant attempt by a majority of the members of this court to reach a desired result without any regard for the resulting consequences. I believe the majority's decision places the parties and circuit court in an untenable position and, therefore, I must respectfully dissent.

It is my opinion that this case is entirely moot based on its specific facts, the issues as presented to this court, and, most notably, the fact that there is a complete lack of time to properly remedy what the majority deems to be error. While I recognize that the parties and

---

[5]The dissenting justices' view that it is necessary for the county clerk to review the 720 signatures is not required under the law. The county clerk has certified, pursuant to section 3-8-205(b), that the local-option petition attained the approval of thirty-eight percent of the registered voters in the county. Therefore, the county clerk has completed his statutory responsibility of certifying the petition, and the clerk's jurisdiction has ended pursuant to section 14-14-915(e). On remand, the question before the circuit court, in its de novo review, will be whether the county clerk's original certification of the petition stands upon consideration of the additional 720 signatures. For the circuit court to make this determination is not a usurpation of the county clerk's duties; rather, it is precisely the function of the circuit court to review the sufficiency of the petition.

SLIP OPINION

the circuit court acted promptly within the time constraints of the governing statutes, and while I may be somewhat sympathetic to the plight of Our Community, Our Dollars ("OCOD"), I simply cannot ignore the fact that there is no reasonable scenario under which timely relief can be granted and, as a result, the majority opinion is going to throw the electoral process in Saline County into chaos.

As the case stands, the circuit court issued an order finding the petition to be insufficient on the basis that it lacked the requisite signatures and that the clerk could not add additional signatures to an insufficient petition to make it sufficient. Based on its findings, the circuit court reversed the clerk's certification and ordered the initiative to be removed from the Saline County general election ballot. It further ordered the county election commissioners to not "tabulate, count, or otherwise certify any votes cast on the issue on November 4, 2014." The circuit court stayed the first part of its order, so the initiative is on the general-election ballot, but the circuit court did not stay the part of its order enjoining the commissioners from counting or certifying any votes cast. OCOD has not requested that this court issue a stay of the injunctive portion of the court's ruling. In fact, OCOD asks us to reverse the circuit court's order finding the petition to be insufficient and order the votes cast on the question be counted. The majority grants only part of the requested relief in reversing the circuit court's finding of insufficiency based on the court's failure to consider the unprocessed signatures. More specifically, it reverses the circuit court and orders it to perform a "de novo review by determining the sufficiency of the petition, as consistent with this opinion."

20

SLIP OPINION

In so doing, the majority directs the circuit court "to consider the validity of the uncounted 720 signatures." While this directive is not entirely clear, the majority seems to be suggesting that it is now the circuit court's responsibility to certify the petition based on these additional signatures. The absurdity of this is mind-boggling. In one fell swoop, the majority, without any authority to support itself, is forcing the circuit court to abdicate its judicial function and usurp the authority of the county clerk who is charged with reviewing signatures and determining sufficiency, all in the guise of conducting a "de novo review." *See* Ark. Code Ann. § 3-8-205 (Supp. 2013).

The county clerk's July 31, 2014 finding of sufficiency has been set aside. The certification that resulted from that finding is no longer valid, as it is based on a set of numbers that are no longer accurate. In order to comply with Arkansas Code Annotated section 3-8-205(b) (Supp. 2013), it would seem to me that the circuit court should have to send this matter back to the county clerk for issuance of a new certification, based on the 720 signatures that have never been formally processed or reported for purposes of determining sufficiency and certifying the petition. The majority chooses to ignore this critical step because it is clear that it is too late for the issuance of any such certification. Pursuant to Arkansas Code Annotated section 14-14-915(b)(3) (Repl. 2013), all initiative and referendum petitions must be certified sufficient to the county board of election commissioners not less than seventy (70) calendar days prior to a regular general election. Clearly, we are long past that mandatory deadline. *See Dean v. Williams*, 339 Ark. 439, 6 S.W.3d 89 (1999) (holding that after local-option petitions are filed with the county clerk, subsequent proceedings thereon shall be had

and conducted in the manner provided for county initiative measures under Amendment 7 and its enabling acts). For this reason alone, I believe that this case as presented to us is moot.

Quite frankly, I believe the majority's disregard of the obvious time-constraints results from its failure to comprehend the ripple effect of its decision. Even though the majority is operating under the false belief that no new certification is necessary, I still do not believe that there is enough time to remand this matter to the circuit court and definitively settle the case. Even if we assume that the clerk, the circuit court, and the parties act in the most expeditious manner possible upon remand, one side is going to lose before the circuit court and that losing party has the right to bring another appeal before this court. Thus, I simply do not believe that under any reasonable scenario can there be a final resolution of this case before the election, or even before the time when the county board of election commissioners must certify the election results to the Secretary of State.

Notwithstanding my concern that this case is moot, I must also point out that I believe the majority's conclusion that the circuit court erred in refusing to consider the 720 excess signatures is wrong. The majority opines that if it affirmed the circuit court on this point, it "would silence the voices of registered voters who properly affix their names to a petition but whose signatures are deemed unnecessary to count by a county clerk." While this is a nice sentiment, it ignores two critical facts. First, the majority is assuming, without any evidence to support it, that all 720 of those signatures are valid. Appellees were never given a chance to contest the validity of those signatures, and there has been no finding by the circuit court that the signatures are valid. Second, the majority takes no issue with silencing the voices of

those persons who were unlucky enough to sign a petition part that was later deemed to have one invalid signature. According to OCOD, the circuit court's decision to strike all signatures on a petition part with one invalid signature resulted in the improper striking of ninety-two signatures. While I agree with the majority's conclusion to affirm the circuit court on this point because our law clearly states that the presumption of verity of those signatures was lost, I point to this fact that the signing of a petition does not come with any attendant guarantee of a signor's voice being heard.

While I recognize that the initiative process reserved to the people is an important one, it is also a process that must adhere to applicable statutory and constitutional requirements. As I stated, I have some sympathy for the plight of OCOD because of the county clerk's failure to review and certify all signatures submitted, but I cannot ignore the fact that OCOD, as sponsor, bore the burden of presenting ample signatures in the first instance, knowing well the likelihood of a large percentage of those signatures being invalidated upon review. Moreover, the predicament caused by the clerk's failure to count and certify all signatures presented is a legislative problem that requires intervention by the General Assembly, not this court.

For the reasons stated herein, I respectfully dissent.

HANNAH, C.J., and DANIELSON, J., join in this dissent.

*Mitchell, Williams, Selig, Gates & Woodyardd, P.L.L.C.*, by: *John Keeling Baker* and *Brian A. Pipkin*, for appellant.
*Friday, Eldredge & Clark, LLP*, by: *Elizabeth Robben Murray*, *Ellen Owens Smith*, and *Amanda Fray*, for appellees.