Cite as 2024 Ark. 167

# SUPREME COURT OF ARKANSAS
**No.** CV-24-587

|  |  |
|---|---|
|  | **Opinion Delivered:** October 31, 2024 |
| BECKY LEWALLEN, IN HER OFFICIAL CAPACITY AS WASHINGTON COUNTY CLERK <br>        APPELLANT <br><br> V. <br><br> PROGRESS FOR CANE HILL, A LOCAL-OPTION BALLOT QUESTION COMMITTEE <br>        APPELLEE | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CV-24-2711] <br><br> HONORABLE DOUG MARTIN, JUDGE <br><br> <u>REVERSED AND REMANDED</u>. |

**SHAWN A. WOMACK, Associate Justice**

Becky Lewallen, the Washington County Circuit Clerk, appeals the circuit court's order requiring her to place Progress for Cane Hill's local-option ballot initiative on this year's general election ballot. There is one issue presented in this appeal: does Arkansas Code Annotated section 7-9-103(a)(6)'s residency requirement for paid canvassers apply to local-option ballot initiatives? Lewallen argues it does and that the circuit court erred by concluding otherwise. We agree with Lewallen and reverse and remand.

## I. *Background*

Progress for Cane Hill is a local-option ballot committee. Cane Hill collected a sufficient number of signatures to have a proposed local ordinance on November's ballot that would make two precincts in Cane Hill "wet." But Lewallen rejected Cane Hill's

proposed ballot initiative because 332 of the signatures were collected by paid canvassers who were not residents of Arkansas.

Pursuant to Arkansas Code Annotated section 3-8-809(b), Cane Hill challenged the rejection in the Washington County Circuit Court. After briefing and a hearing, the circuit court found that Arkansas Code Annotated section 7-9-103(a)(6)'s residency requirement did not apply to local–option ballot initiatives and ordered Lewallen to certify the sufficiency of the initiative. Lewallen now appeals. This court has jurisdiction under Rule 1-2(a)(4) of the Rules of the Arkansas Supreme Court.

## II. *Discussion*

This is a simple case of statutory interpretation. We review issues of statutory interpretation de novo, construing the statute just as it reads and giving the words their ordinary and usually accepted meaning in common language.[1]

Local-option ballot initiatives are generally governed by Arkansas Code Annotated section 3-8-101 et seq. (the "Local Option Code"). However, the Local Option Code states that, "[e]xcept as provided in *this section*, a petition for local option election shall be governed by § 7-9-101 et seq. and § 3-8-801 et seq."[2] The referenced section is section 3-8-502, which does not discuss paid canvasser qualifications for local-option ballot initiatives. Instead, the qualifications for paid canvassers circulating local-option ballot initiatives are found in Arkansas Code Annotated section 3-8–802, which also fails to address any residency requirement for paid canvassers for local–option ballot initiatives.

---

[1]*Zook v. Martin*, 2018 Ark. 306, at 3, 558 S.W.3d 385, 389.
[2]Ark. Code Ann. § 3-8–502(c) (Repl. 2017) (emphasis added).

Lewallen argues that section 3-8-502(c), which states that "[e]xcept as provided in this section, a petition for local option election shall be governed by § 7-9-101 et seq. and § 3-8-801 et seq." makes the residency requirement found in section 7-9-103(a)(6) applicable to local-option elections. She notes that this court has recognized the applicability of section 7-9-101 et seq. to local-option ballot initiatives in *Save Energy Reap Taxes v. Shaw*.[3] Further, she asserts that the General Assembly's intent for the Election Code to apply to local-option ballot initiatives is clear, and nothing in the Local Option Code excepts, or conflicts, with section 7-9-103(a)(6). Lewallen makes this argument for good reason: the requirements of the Election Code are expressly adopted by and incorporated into the Local Option Code.[4]

In response, Cane Hill argues that because section 3-8-802(b) provides qualifications for a local-option ballot initiative's paid canvassers, the "except for" language in section 3-8-502(c) precludes consideration of section 7-9-101 et seq. in this context. But the "except for provided *in this section*" language only applies to that section—section 3-8-502. And there is no discussion about paid canvasser qualifications in section 3-8-502. Thus, this provision alone does not support Cane Hill's argument.

Cane Hill also argues that *Johnston v. Bramlett*, which held that local-option ballot initiatives permitting liquor sales were not "an election provided for by the Constitution, and the provisions of the Constitution cited have no application[,]" should control our decision today.[5] In the same vein, Cane Hill cites *Our Community, Our Dollars v. Bullock*

---

[3]374 Ark. 428, 432, 288 S.W.3d 601, 603 (2008).
[4]Ark. Code Ann. § 3-8-502(c).
[5]193 Ark. 71, 97 S.W.3d 631, 632 (1936).

3

for the proposition that "local option elections are not initiated measures within the meaning of amendment" and argues that, therefore, the general Election Code and its governance of statewide initiatives should not apply.[6]

First, Cane Hill's reliance on *Bramlett* is misplaced. In the nearly ninety years since this court decided *Bramlett*, the General Assembly has amended the Local Option Code multiple times to expressly make the general Election Code applicable to local-option ballot initiatives. Likewise, Cane Hill's reliance on *Bullock* is not helpful. In *Bullock*, this court held that a local-option ballot initiative does not require an enacting clause because Arkansas Code Annotated section 7-9-104(a)'s application was expressly limited to an "ordinance, act, or amendment proposed by initiative."[7] Unlike the statute at issue in *Bullock*, section 7-9-103(a)(6) does not limit the paid-canvasser residency requirement to certain kinds of ballot initiatives.

The dissent argues that, because Cane Hill's local-option ballot initiative is neither an initiative nor a referendum petition, Cane Hill's paid canvassers are not "canvassers" as defined in the general Election Code. Arkansas Code Annotated section 7-9-101(3) defines "canvasser" as "a person who circulates an initiative or referendum petition or a part or parts of an initiative or referendum petition to obtain the signatures of petitioners thereto[.]" But, as we have repeatedly explained, while a local-option ballot initiative is not an initiated act in within the scope of Amendment 7, it is "in the nature of a referendum."[8] And

---

[6]2014 Ark. 457, at 16–17, 452 S.W.3d 552, 562.

[7]*Id*. at 17, 452 S.W.3d at 562.

[8]*Bullock*, 2014 Ark. 457, at 16–17, 452 S.W.3d at 562; *see also Brown v. Davis,* 226 Ark. 843, 294 S.W.2d 481 (1956); *Yarbrough v. Beardon,* 206 Ark. 553, 555, 177 S.W.2d 38, 39 (1944).

4

referendums are clearly encompassed by the paid-canvasser residency requirement in Arkansas Code Annotated section 7-9-103(a)(6).[9] Moreover, as discussed above, section 3-8-502 specifies that section 7-9-103(a)(6) et seq. apply to local-option elections. If the definition of canvasser in section 7-9-101(3) excludes all local option elections, then section 3-8-502 is superfluous and doesn't make sense. But if we correctly understand that referendum petitions include local-option elections, the statutes and definitions align.

Finally, in response to Lewallen's argument that the residency requirement applies to paid canvassers for local-option ballot initiatives by express incorporation, Cane Hill argues that the Local Option Code is the more specific statute and therefore controls over the more general initiative statute found in the Election Code. It is true that this court has held that a specific statute controls over a general statute.[10] Here, however, the Local Option Code expressly incorporates the more general initiative statute found in the Election Code. Cane Hill's argument that the Local Option Code and the Election Code are not *in pari materia* is inconsistent with the Local Option Code's explicit incorporation of the general Election Code and its separate requirements.

The text of the Local Option Code is clear: "[e]xcept as provided in this section, a petition for local option election *shall be governed by § 7-9-101 et seq. and § 3-8-801 et seq.*"[11] Because local-option ballot initiatives are governed by *both* the Local Option Code and the more general Election Code, Arkansas Code Annotated section 7-9-103(a)(6) applies to

---

[9]Ark. Code Ann. § 7-9-101(3).
[10]*Hackie v. Bryant*, 2022 Ark. 212, at 7, 654 S.W.3d 814, 819.
[11]Ark. Code Ann. § 3-8-502(c) (emphasis added).

5

local-option ballot initiatives. Put another way, paid canvassers for local-option ballot initiatives must be residents of Arkansas.[12] The circuit court erred in concluding otherwise.

Finally, Cane Hill's various constitutional arguments are not properly before this court because there is no evidence that Cane Hill provided the Attorney General with the required notice of its intent to challenge the constitutionality of the residency-requirement statute.[13]

### III. *Conclusion*

Because the text of section 3-8-502(c) means what it says, Lewallen has the correct reading of the Local Option Code and its interplay with the Election Code. Paid canvassers—whether for local-option or statewide ballot initiatives—must be residents of Arkansas.[14] The circuit court's order is reversed, the case is remanded, and votes on the ballot measure are ordered to not be counted.

Reversed and remanded.

Mandate to issue immediately.

Special Justice BILENDA HARRIS-RITTER joins.

WOOD, J., concurs.

BAKER, J., dissents.

KEMP, C.J., not participating.

---

[12]*Id.*; Ark. Code Ann. § 7-9-103(a)(6) (Supp. 2023).
[13]*Olmstead v. Logan*, 298 Ark. 421, 423, 768 S.W.2d 26, 27 (1989).
[14]Ark. Code Ann. § 7-9-103(a)(6) (Supp. 2023).

**RHONDA K. WOOD, Justice, concurring.** I join the majority but write separately to address the dissent's unwillingness to perform its most basic constitutional role at a time when our state and country need it most. Our role is to uphold the Arkansas Constitution and statutes when constitutional. We cannot avoid making decisions with tough outcomes. Yes, it is hard to say voters will not get to vote on an issue, but we stand as the last line of defense to make sure everyone plays by the rules. We were called on to ask if a group could hire canvassers from outside Arkansas, and the statutes say no.

There are guardrails to the election process. If the people of Arkansas want these guardrails removed, then they must seek statutory reform. None of the members of this court has held these guardrails unconstitutional and as such, we must make sure everyone stays within them. For some reason the dissenters have taken it upon themselves to ignore all existing guardrails. Rather than judging each case on its own merits, it has decided to only call balls and never call strikes. Everyone up to bat will get to walk. But this pitch came right down the middle, thus we must call it a strike.

The parties all admit this vote does not qualify for the ballot if the canvassers must be residents of Arkansas. But the law requires that a "person shall not act as a canvasser unless he or she is a resident of this state." Ark. Code Ann. § 7-9-103(a)(6). The Act governing local-option elections has several provisions explaining why the residency requirement applies. *See* Ark. Code Ann. § 3-8-801 et seq.

First, two sections within the Act state "[A] petition for local option election shall be governed by § 7-9-101 et seq [the residency section] and § 3-8-701 et seq." Ark. Code Ann. § 3-8-205(e) and Ark. Code Ann. § 3-8-502(c). We interpret statutes according to

7

their plain meaning and avoid leaving any word superfluous. *See St. Vincent Med. Grp. v. Baldwin*, 2023 Ark. 151, at 6, 675 S.W.3d 862, 867. Shall means shall. And we cannot ignore, or leave superfluous, that only two sections, 205 and 502, carve out exceptions to the general governance of section 7-9-101 (which includes the residency requirement). Notably absent from residency requirement exclusion was the definition of canvassers, which the dissent inartfully tries to explain away.

Second, further language states that "[a]ll general election laws to protect the purity of elections shall be applicable to this act." Ark. Code Ann. § 3-8-308 (b). This stands out because the language derived from Act 108 of 1935. The plain language shows the original intent of the General Assembly to protect the integrity of local-option elections as is its role provided in the constitution. The dissent is flat wrong to say the specific trumps the general when the Act's language states that, "all general election laws … shall be applicable." Both cannot be true.

As to Cane Hill's reliance on *Johnston v. Bramlett*, it is an outdated precedent. 193 Ark. 71, 97 S.W.2d 631 (1936). The dissenters also play word games trying to explain away how Amendment 7 doesn't apply and this is not really a referendum. But both ignore that the General Assembly repeatedly passed provisions explaining that "the election and all proceedings, including the preparations of the petition shall be in accordance with the provisions of Amendment Number Seven to the Constitution of the State of Arkansas and the enabling acts …" Act 359 of 1957 (repeating this terminology throughout various provisions). The General Assembly continued to adopt this and similar language over later decades. In fact, anytime this court has tried to hold the opposite, the General Assembly has

8

reacted and passed legislation reaffirming the applicability. This is consistent with the interpretation of the current language in the local-option code that residency requirements apply to canvassers circulating local-option petitions. *See* Ark. Code Ann. § 3-8-801 et seq. This is also why multiple provisions refer to the general election law provisions regarding referendums applying to local-option elections. Shall means shall. And except only means except only.

The Arkansas Constitution provides that the people reserved for themselves the power of the initiative process, the referendum process, and the power to pass local, special, and municipal legislation. But it also allowed restrictions to ensure safe and secure elections. This court must do its job, even when the decisions are difficult. We are a nation of laws, and at election time we cannot sit back and refuse to uphold them simply because it provides a political platform.

**KAREN R. BAKER, Justice, dissenting.** Because Arkansas law does not require paid canvassers for local-option petitions to be residents of Arkansas, I must dissent from the majority's decision to reverse the circuit court's order directing Lewallen to certify the sufficiency of the petition. Stated differently, I would let the people vote.

Our consideration of the narrow issue before us requires the interpretation of various statutes. Thus, an overview of our longstanding rules of statutory interpretation is essential to a thorough and proper analysis. We review issues of statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *Thurston v. Safe Surgery Ark.*, 2021 Ark. 55, at 8–9, 619 S.W.3d 1, 7–8. The basic rule of statutory construction is to give effect to the intent of the legislature by giving words their usual and ordinary meaning. *Dep't of*

*Fin. & Admin. v. Wilson*, 2024 Ark. 25, at 7, 684 S.W.3d 575, 579. When a statute is clear, it is given its plain meaning, and we will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 52, 38 S.W.3d 356, 360 (2001). In other words, if the language of the statute is plain and unambiguous, the analysis need go no further. *Id*. We construe statutes so that no word is left void, superfluous, or insignificant, and we give meaning to every word in the statute, if possible. *Safe Surgery Ark.*, 2021 Ark. 55, at 9, 619 S.W.3d at 8.

The majority asserts that "[t]he text of the Local Option Code is clear: '[e]xcept as provided in this section, a petition for local option election shall be governed by § 7-9-101 et seq. and § 3-8-801 et seq.' Because local-option ballot initiatives are governed by both the Local Option Code and the more general Election Code, Arkansas Code Annotated section 7-9-103(a)(6) applies to local-option ballot initiatives. Put another way, paid canvassers for local-option ballot initiatives must be residents of Arkansas." While I agree that a proper analysis of the statutes at issue rises and falls with the clear language set forth in each statute, the majority disregards a critical piece of this basic plain-language analysis.

Section 3-8-101 et seq. (Repl. 2017 & Supp. 2023), the Local Option Code, is the starting point for local-option elections. Section 3-8-802 governs the hiring and training of paid canvassers, and it states that "[a] person shall not provide money or anything of value to another person for obtaining signatures on a local option election petition unless the person receiving the money or item of value meets the requirements of this section." Ark. Code Ann. § 3-8-802(a)(1). The majority concedes that the Local Option Code "fails to

address" a residency requirement for paid canvassers circulating local-option petitions. In other words, it is undisputed that the Local Option Code does not require that paid canvassers for local-option petitions be residents of Arkansas. Section 3-8-502, which governs local option elections in certain annexed areas, provides that "[e]xcept as provided in this section, a petition for local option election shall be governed by § 7-9-101 et seq. and § 3-8-801 et seq." Ark. Code Ann. § 3-8-502(c). Section 7-9-103(a)(6) (Supp. 2023), which is codified within the general-initiative statutes in the Election Code, states that "a person shall not act as a canvasser unless he or she is a resident of this state." The majority adopts Lewallen's argument that, based on the foregoing, local-option petitions are governed by both the provisions of the general-initiative statutes as well as the Local Option Code, which means that the residency requirement set forth in section 7-9-103(a)(6) applies to paid canvassers for local-option petitions.

A review of the preceding framework highlights an apparent conflict between the relevant statutes, as the Local Option Code does not require paid canvassers for local-option petitions to be Arkansas residents and section 7-9-103(a)(6) states that "[a] person shall not act as a canvasser unless he or she is a resident of this state." We have made clear that "[w]hen statutes seemingly conflict, it is blackletter law for statutory construction to give effect to the specific statute over the general." *Johnson v. Wright*, 2022 Ark. 57, at 10, 640 S.W.3d 401, 407; *see also Wilson*, *supra*. While the admittedly more general statute, section 7-9-103(a)(6), states that "[a] person shall not act as a canvasser unless he or she is a resident of this state[,]" the term "canvasser" is defined in that particular subchapter as "a person who circulates *an initiative or referendum petition* or a part or parts of *an initiative or referendum petition*

11

to obtain the signatures of petitioners thereto[.]" Ark. Code Ann. § 7-9- 101(3) (emphasis added). It is undisputed that the paid canvassers in the present case were not circulating an initiative or referendum petition within the meaning of section 7-9-101 et seq. Instead, they were circulating a local–option petition. The more specific statute, which is found in the Local Option Code, defines "paid canvasser" as "a person who is paid or with whom there is an agreement to pay money or anything of value before or after a signature *on a local option election petition* is solicited in exchange for soliciting or obtaining a signature on a petition[.]" Ark. Code Ann. § 3-8-801(3) (emphasis added). Therefore, a plain–language reading of the statutes at issue makes clear that the paid canvassers in the present case were not "canvassers" within the meaning of section 7-9-103(a)(6). Rather, they were "paid canvassers" as defined in the Local Option Code, a statutory scheme that does not impose a residency requirement on its paid canvassers. In other words, the residency requirement found in section 7-9-103(a)(6) demonstrably does not, and cannot, apply to paid canvassers for local–option petitions because of the limiting statutory definitions of the terms at issue.

The majority nevertheless attempts to rationalize its decision to apply this residency requirement to paid canvassers for local–option petitions by explaining that "while a local–option ballot initiative is not an initiated act in within the scope of Amendment 7, it is '*in the nature of a referendum*.'" (Emphasis added). We have made clear that "in construing statutes, this court will not add words to a statute to convey a meaning that is not there. *Our Cmty., Our Dollars v. Bullock*, 2014 Ark. 457, 18, 452 S.W.3d 552, 563. Furthermore, we will not read into a statute a provision not put there by the General Assembly. *Id*. Despite these longstanding principles, the majority sets forth the correct definition of "canvasser"

pursuant to section 7-9-101(3) and suggests that canvassers for local-option petitions are close enough because those petitions are "in the nature of a referendum." However, it is important to note that the definition of "canvasser" found in the general-initiative statutes plainly does not encompass "a person who circulates a petition *in the nature of a referendum*." Rather than forcing the paid canvassers in the present case into a statutorily defined category in which they do not belong, the definition of "paid canvasser" found in section 3-8-801(3) demonstrates that these canvassers are properly governed by the more specific statute, the Local Option Code. As discussed above, the Local Option Code does not require paid canvassers for local-option petitions to be Arkansas residents.

The concurrence has curiously expressed that "it is hard to say voters will not get to vote on an issue, but we stand as the last line of defense to make sure everyone plays by the rules." Of course, the "*rules*" that the concurrence requires compliance with are oftentimes its own set of rules—not the rules of this court. *See e.g., Cowles v. Thurston*, 2024 Ark. 121, 695 S.W.3d 60. The concurrence has mistaken roadblocks for guardrails and has repeatedly thrown up a "road closed" barricade in front of Arkansas voters throughout this election cycle. Consistent with this trend, the concurrence has lost sight of the narrow issue before us in this case. First, I echo the concurrence's appreciation for the critical role this court plays in upholding the Arkansas Constitution and statutes that have been deemed constitutional. However, the concurrence's disingenuous concern that the dissent is "unwillin[g] to perform its most basic constitutional role" is entirely misplaced in the present case, perhaps by design. As the majority has clearly recognized, the issue in the present case does not involve a determination of the constitutionality of the implicated statutes, but

13

rather, we are tasked only with performing a basic statutory interpretation analysis. Therefore, the concurrence may cast its concerns about any alleged dereliction of constitutional duty aside. Further, although the concurrence characterizes the application of our established statutory interpretation principles to the facts of this case as "play[ing] word games," statutory interpretation—i.e., carefully parsing the words of the statutes at issue— is what we are called to do. When a statute is clear, as is the case here, the words are given their plain meaning. We have explained that "[w]hen the will of the General Assembly is clearly expressed, we are required to adhere to it without regard to consequences. It is not the function of this court to legislate; to do so would be a clear violation of this court's authority." *Hatcher v. Hatcher*, 265 Ark. 681, at 687, 580 S.W.2d 475, 477 (1979) (internal citations omitted). It is the function of the General Assembly to offer remedial legislation to address perceived statutory inadequacies. *McMillan v. Live Nation Ent., Inc.*, 2012 Ark. 166, 6, 401 S.W.3d 473, 477. The concurrence comments that "anytime this court has tried to hold [that Amendment 7 does not apply]" in this context, the General Assembly has "reacted and passed legislation." That is indeed the proper role of the legislature—not this court.

In light of the foregoing, the circuit court correctly concluded that the "statutes governing local option elections do not require paid canvassers to be residents of the State of Arkansas and the provisions of section 7-9-103(a)(6) are not applicable to local option petitions[,]" and I would affirm. This case serves as yet another harsh reminder that— whether on a local or a statewide basis—the majority will take every opportunity to interpret a statute in such a way that prevents the citizens of Arkansas, the very people we were sworn to serve, from making their voices heard on matters that are headed for the ballot. It would

14

be a mistake for this court to assume that it knows better than the people of Arkansas concerning issues that have a personal effect on them and the areas in which they live.

Accordingly, I dissent.

HUDSON, J., joins.

*Wright Lindsey & Jennings* LLP, by: *Rodney P. Moore* and *Michael A. Thompson*, for appellant.

*Everett Law Firm*, by: *John C. Everett*, for appellee.